## No. 11,174.

### THE STATE EX REL. DAVID J. POWERS VS. THE RECORDER OF MORTGAGES AND CITY OF NEW ORLEANS.

1. It has been definitely settled by repeated decisions of this court that privileges and mortgages securing municipal taxes of years antecedent to 1877 are imprescriptible, but those securing taxes subsequent to 1877 are prescriptible by the terms of different revenue laws—the one applicable to the city taxes in question being that of 1886, fixing the period of prescription at three years.

2. Notwithstanding there is no recital in the *proces verbal* of adjudication to the State, or in the act of sale from the auditor to her vendee, that *taxes previously assessed* against the property are assumed as part of the purchase price, the terms of the statute, on the authority of which the sales are made, must control, and charge the purchaser from the State with full knowledge that such assumption is a condition of the sale.

3. It is axiomatic and well settled law that the sovereign, being owner of property, can sell same, fix the price and impose such conditions of sale upon purchasers as she deems fit and proper; and, in the absence of any interfering constitutional prohibition, the General Assembly may provide for such property being subjected to municipal taxation during the time of her proprietorship.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Benjamin Ory* for the Relator, Appellant:

1. All public property and property belonging to the State shall be exempt from taxation. Constitution, Article 207; Revised Statutes, Sec. 3233.

2. The purchase by the State of property sold on account of unpaid taxes extinguishes the debt and all liens arising from taxes. Lands belonging to the State are exempt from taxation, and hence one who purchases land from the State takes it free from all liens and obligations springing from taxation. Bradford vs. Lafargue, 30 An. 432.

3. When the privileges by which taxes are secured are prescribed, such taxes become mere personal claims against the tax debtor. They cease to be "taxes due on property" within the meaning of Section 3615 of the Revised Statutes, which must be construed in connection with other laws *in pari materia*. Scholefield, Goodman & Co. vs. West, 44 An. 277.

4. That an assumption of a debt may be judicially enforced, it must be clear, explicit and certain. The plaintiffs not having assumed the debt and not having acknowledged the lien and privilege are not estopped. Leeds & Co. vs. Hardy et al., 44 An. 556.

5. After property has been adjudicated to the State, in default of a bidder, the same shall be continued to be assessed in the name of the person to whom it belonged at the date of the sale, for the lapse of one year thereafter only. Sec. 69 of Act 96 of 1888.

6. The liens for city taxes from 1877 to 1884, inclusive, are prescribed by three years. See Secs. 36 and 102 of Act 96 of 1877 and Succession Stewart, 41 An. 127.

7. Tax liens for city taxes for the years 1885 and 1886 are prescribed by three years under Secs. 36 and 102 of Act 96 of 1877; or by five years under Sec. 34 of Act 96 of 1882.

8. Tax liens for city taxes for 1887 and 1888 are prescribed by three years under Sec. 1 of Act 26 of 1886.

9. Section 2 of Act 80 of 1888 provides: That the property shall be adjudicated to the last and the highest bidder for cash, payable in current money of the United States, at the time of the adjudication; provided, no bid shall be accepted or sale made for a less amount than the total amount for which the property was adjudicated to the State, together with 20 per cent. thereon and all costs of enforcing this act. All money realized from the enforcement of this act shall be included in the first return of the Tax Collector to the Auditor of Public Accounts made after receiving the same, and paid into the State treasury to the credit of the general fund. See Sec. 2 of Act 80 of 1888.

10. Section 3 of Act 80 of 1888 provides: That when any property sold to the State for unpaid taxes has been once advertised and offered for sale in accordance with the provisions of this act, and has failed to sell, then the Auditor of Public Accounts shall be authorized to receive bids for all such unsold property and sell the same and execute a deed thereto; provided, no sale shall be made for a less amount than is provided for in the foregoing section. See Sec. 3 of 1887.

11. Section 5 of Act 80 of 1888 provides: That all the sales made under this act shall vest in the purchaser "an absolute and perfect " title to the property conveyed in the deed of sale, without any claim thereto by any former owner, and free of all mortgages, liens, privileges and encumbrances whatsoever, except all city and municipal taxes. See Sec. 5 of Act 80 of 1888.

12. Section 6 of Act 80 of 1888 provides: That the price bid and paid for said property shall be in full and final payment and satisfaction of all State taxes, together with all costs thereon due and exigible at the time the property was adjudicated to the State, and the purchaser shall take said property subject to all subsequent taxes, State, parish and municipal. See Sec. 6 of Act 80 of 1888.

13. Selling land as subject to a mortgage or privilege does not make the purchaser personally liable. Balfour vs. Chew, 4 N. S. 154; Massey vs. Finch, 24 An. 29.

14. A third possessor is he who has acquired property subject to a mortgage or privilege without having assumed payment thereof. C. P. 41, 68, 69, 71.

15. A third person to a contract or obligation is a person who was not a party to such contract or obligation. C. C. 3556, No. 32; VanLoan vs. Heffner, 30 An. 1213.

16. The promise to pay the debt of a third person is in the nature of an obligation of suretyship. It can be enforced only by written evidence signed by the party; and is to be restrained within the limits intended by the contract. C. C. 2278 and 3039.

568      SUPREME COURT OF LOUISIANA.

State ex rel. Powers vs. Recorder of Mortgages and City.

17. Privileges become extinct: 1. By the destruction of the thing subject to the privilege. 2. By the creditor acquiring the thing subject to it. 3. By the extinction of the debt which gave birth to it. 4. By prescription. C. C. 3277.

18. Prescription runs against all persons, unless they are included in some exception established by law. C. C. 3521.

19. There are two modes of interrupting prescription—that is, by a natural interruption or by a legal interruption. C. C. 3516.

20. A legal interruption takes place when the possessor has been cited to appear before a court of justice, on account either of the ownership or of the possession. C. C. 3518.

21. Prescription ceases likewise to run whenever the debtor or possessor makes acknowledgment of the right or claim. C. C. 3520.

22. All taxes, tax privileges and tax mortgages are prescribed by three or five years, and this prescription is suspended or interrupted only by an injunction which prevents the collection. See Act 96 of 1877, Secs. 36 and 102; Act 77 of 1880, Sec. 24; Act 96 of 1882, Sec. 24; Act 98 of 1886, Sec. 34; Act 26 of 1886, Sec. 1; Act 85 of 1888, Sec. 33.

*L. O'Donnell* and *G. W. Flynn,* Assistant City Attorneys, *contra.*

The opinion of the court was delivered by

WATKINS, J. This is a proceeding by mandamus to compel the recorder of mortgages of the parish of Orleans to cancel and erase from the books of his office each and every one of the tax inscriptions named and listed in his petition, as registered against or bearing upon the property in controversy.

The city of New Orleans is made a party respondent, and the mayor is duly cited, and relator's prayer is that all of the within named inscriptions of city taxes be likewise canceled and erased.

The answer is practically a general denial. The claim of relator is that the property involved in this suit was adjudicated to the State of Louisiana at a tax sale made on the 27th of December, 1884, in pursuance of and in conformity to the provisions of Act 96 of 1882, and that this acquisition is evidenced by two deeds of sale executed by the tax collector before a notary public on the 4th of February, 1885. That Benjamin Ory acquired said property from the State of Louisiana, as adjudicated, at a public judicial sale of said property, on the 16th of May, 1872, made in presence of and in conformity with the provisions of Sec. 3 of Act 80 of 1888, and that same is evidenced by a deed executed in his favor by the Auditor of Public Accounts.

That the relator purchased the property from said Ory, as per notarial act of sale of date July 5, 1892.

The specific averment of relator's petition is, that in the deed of sale from the State to Ory there was no assumption on the part of the latter to pay any city taxes whatsoever that might be claimed against the property; and that in the deed of sale from Ory to the relator the latter made no such assumption.

As ancillary to the relief demanded, the latter pleads the prescription of three and five years against all the liens, privileges and mortgages securing the city taxes that were assessed against the property during the years 1877 to 1889, inclusive; and further pleads in the alternative the extinguishment, by virtue of the tax sales to the State in December. 1884, of all *city* taxes assessed against same during the years 1870 to 1884, inclusive.

His further averment is, that there was no warrant in law for the levy and assessment against said property during the years 1884 to 1892, inclusive; on the theory, doubtless, that no taxes could lawfully be assessed against the property in favor of the State while she was invested with title thereto.

The respondent's contention *per contra* is that the relator claims title through Ory's acquisition from the State, to whom the property was adjudicated under and in pursuance of the terms, conditions and provisions of Act 80 of 1888, and that he is, therefore, bound and conclusively barred thereby from urging any such defence; and, further, that an adjudication made under that statute vested the State with an absolute title to the property, in as far as the claims or demands of any former owner are concerned; and free of all mortgages, liens or incumbrances whatsoever, though remaining *subject to all subsequent taxes, State, parish and municipal.* And that, inasmuch as the payment of all city and municipal taxes is made one of the conditions on which such adjudication is made, the relator is without legal right to the relief he has demanded; and that he is not entitled, for that reason, to have the mandamus made peremptory, notwithstanding the act of sale and *proces verbal* contain no assumption of the taxes existing at that date.

The following are the substantial facts as they appear of record, to-wit:

On the 4th of February, 1885, the State tax collector executed to the State of Louisiana a notarial act of sale of the property in controversy for the price of $8.54 in cash, |and the assumption of the State taxes of the year 1882, and all costs and fees due thereon, same

having been made in pursuance of an adjudication made thereof on the 27th of December, 1884, in conformity to the provisions of Act 96 of 1882, in the collection of the State taxes of 1892.

On the same date said tax collector executed a similar act of sale of the same property to the State for the price of $8.44 in cash, and the assumption of the State taxes of 1883, and all costs and fees due thereon, in pursuance of a like adjudication under the aforesaid law.

On the 16th of May, 1892, the Auditor of Public Accounts executed an act of sale of said property, in pursuance of the provisions of Sec. 3 of Act 80 of 1888, to Benjamin Ory, as that which had been previously adjudicated to the State in December, 1884, for the expressed consideration of $49.44, the receipt whereof is duly acknowledged.

This act makes the following specific imputation of the purchase price, to-wit:

First—State and City taxes for the years 1881, 1882 and 1883, aggregating .... .... .... .... .... .... .... .... .... .... .... $17 01
Second—Damages or interest of 20 per cent .... .... .... .... .... 3 40
Third—State taxes for the year 1884 .... .... .... .... .... .... .... 12 93
Fourth—Surplus to cover costs .... .... .... .... .... .... .... .... .... 10 19
                                                                    _____
                                                                    $43 53

On the 5th of July, 1892, Ory conveyed, by a quit-claim title, to the relator, the property as that he had previously acquired from the State—reciting in the act his chain of title as above described.

The certificate of mortgages shows *State* taxes recorded against the property in the name of one *Cammack*, for and during the years 1875 to 1891 inclusive, and *city* taxes for and during the years 1870 to 1876 inclusive. It also shows *State* taxes assessed against it in the name of *Scholtz*, for and during the years 1880 to 1891 inclusive, and *city* taxes from 1877 to 1891 inclusive.

In the first place it must be observed that this contestation is exclusively confined to liens, privileges and mortgages securing *city* taxes, and that none of same are covered by or are included in the sales and adjudications above referred, in specific terms.

In Davidson vs. Lindop, 36 An. 765, we held that the *privileges* securing municipal taxes antecedent to 1877 were practically imprescriptible, but in Succession of Stewart, 41 An. 127, we held that the provisions of Act 96 of 1877 regulated the prescription of *municipal taxes and privileges*, securing the payment of taxes assessed in the years 1880, 1882 and 1883, as well as of those assessed in 1877, 1878 and 1879.

The principles announced in those cases have been repeatedly affirmed since, and same may be considered as finally and firmly settled.

Accepting this theory, we must necessarily maintain the imprescriptibility of the privileges securing city taxes that were assessed against the property in the name of Cammack during the years 1870 to 1876 inclusive; and likewise maintain the prescriptibility of those assessed in the name of Scholtz during the years 1877 to 1891 inclusive.

Taking the date of the service of the writ of mandamus, November 30, 1892, as that from which the computation of time is to be made, and we find that all tax mortgages and tax privileges securing the payment of municipal taxes of the years antecedent to 1889 are prescribed by the terms of the revenue laws of 1886, which are as follows, viz.:

"All taxes, tax mortgages and tax privileges shall be prescribed by three years from the date of the filing of the tax roll"—which the law requires to be filed before the first day of September. Sec. 34 of Act 98 of 1886. And by the periods of three and five years' prescription under prior revenue laws.

Consequently, we find that all the inscriptions of liens or mortgages securing city taxes, assessed against the property for and during the years 1877 to 1888, inclusive should be canceled and erased from the mortgage records of the parish; those prior to 1877 being imprescriptible and remaining in full force.

The remaining question is, whether the two tax sales of the property made to the State in December, 1884, rendered it exempt from taxation during the period of time it was property of the sovereign, and consequently operated the nullity of the tax liens and mortgages securing the taxes of the years 1889, 1890 and 1891, not covered by the prescription urged.

We take it to be clear that, notwithstanding the fact that there is in the acts of sale to Ory and relator no specific assumption of *taxes assessed previously*, the terms of the statute, on the authority of which the conveyance was made, must control; and they are to the effect "that all sales under this act shall vest in the purchaser an absolute and perfect title to the property conveyed in the deed of sale, without any claim thereto by any former owner, and free, if any, *mortgages, liens, privileges or incumbrances whatsoever, except all city and municipal taxes.*" Sec. 5 of Act 80 of 1888.

It likewise appears to be clear that it was the definite purpose of the Legislature to make property purchased by the State liable to *subsequent taxation*, State, parish and municipal, as will appear from the following, viz.:

"Be it further enacted, that the price bid and paid for said property shall be in full and final payment and satisfaction of all State taxes, together with all costs thereon, *due and exigible at the time the property was adjudicated to the State*, and the purchaser shall take said property *subject to all subsequent taxes, State, parish and municipal.*" Id., Sec. 6.

The price of adjudication to the State is to be in full and final payment of "all taxes due and exigible at the time the property is adjudicated to the State;" and the further specific requirement of the law is that "the purchaser (from the State) *shall take said property subject to all subsequent taxes, State, parish and municipal.*"

Having the precept of that statute before him, relator's vendor, Ory, became the purchaser of the property charged with the payment of *municipal taxes* that were assessed *subsequently* to the adjudication thereof to the State, and he thus voluntarily assumed responsibility for their payment.

But if this statute fixed upon Ory full responsibility for the payment of the taxes themselves, his vendee, not having made any assumption thereof, is not responsible therefor; and in any event is entitled to have the inscriptions erased.

It is claimed, however, that such taxes are illegal and violative of the provisions of the Constitution—citing Art. 297 thereof, and also R. S., Sec. 3233.

The provisions of Art. 203 is that "all property shall be taxed," while those of Art. 207 are that "the following property shall be exempt from taxation, and no other, viz.: *all public property*," etc., thus showing that the terms of the exemption do not exempt, specifically, *lands or property of the State*, and that the Legislature was not inhibited from providing for their taxation.

The phraseology of the section of the Revised Statutes referred to is much more comprehensive, for it declares, to-wit:

"*The following property shall be exempt from taxation:*

"First. All lands and lots of ground with their buildings, improvements and structures, and *all other property belonging to the United States, to the State, or any parish in this State.*"

That enactment was undoubtedly justified by the terms of the Constitution at the time in force, and which declared that " all property shall be taxed in proportion to its value," and conferred upon the General Assembly "power to exempt from taxation property actually used for church, school or charitable purposes"—and no other. Art. 118 of 1868.·

The decision relied upon by the relator—Bradford vs. Lafargue, 30 An. 432—was predicated upon a statute of 1874, of similar import, and which authorized the State, as the adjudicatee of property sold for taxes, to sell same " to any one who shall tender and pay said collector the amount of the *State and parish taxes due on said property*." It imposed on the purchaser from the State no other condition than the payment therefor of the State and parish taxes *then due;* and the court says that " these words can only refer, therefore, to taxes levied *before the State bought*." Consequently the court correctly expressed the opinion in that case that " property of the State is exempt from taxation," and the Legislature properly authorized the sale of the property to any one who will pay the State and parish taxes due when the adjudication to the State was made.

We are clearly of the opinion that the law in question is neither unconstitutional nor illegal, and the *municipal* taxes assessed against the property·in controversy for the years 1889, 1890 and 1891 are legal, and the inscriptions thereof in the book of mortgage is legal and valid.

In State ex rel. Martinez vs. Tax Collector, 42 An. 678, we said, on a question germane to this, that " no reasons are urged or can be urged why the State, being the owner of the property, could not sell the same and fix the price, and impose such conditions on the sale as she deemed fit and proper."

The judgment of the lower court must be reversed. It is therefore ordered, adjudged and decreed that the judgment in favor of the respondents be annulled and reversed; and it is further ordered and decreed that there be judgment in favor of the relator and against the respondent, the city of New Orleans, decreeing all the liens, privileges and mortgages securing the municipal taxes assessed against the property in controversy for and during the years 1877 to 1888 inclusive barred and extinguished by prescription, and against the respondent, the recorder of mortgages, to like extent, only making the mandamus peremptory in respect to said prescribed tax

liens, privileges and mortgages, commanding and compelling him to cancel and erase them from the book of mortgages of the parish of Orleans.

It is finally ordered and decreed that the respondents pay the costs ratably of both courts.