GULF STATES LAND & IMPROVEMENT CO. v. PARKER et al.

(Circuit Court, E. D. Louisiana.    February 8, 1896.)

No. 11,913.

1. TAXATION—SALES OF PROPERTY HELD BY STATE.
    Under the Louisiana statute of 1888 (Act No. 80), where property acquired by the state for nonpayment of taxes is sold, not only the purchaser from the state, but also his vendee, is liable for the taxes due on such property.

2. SAME—ASSESSMENT OF LANDS HELD BY STATE.
    Under the said act, lands acquired and held by the state because of nonpayment of taxes are subject to taxation, state and municipal, not only for one year immediately after their acquisition by the state, but for all the years they are held by it.

Complainant brought suit against defendant C. H. Parker, tax collector, to restrain the collection of taxes on certain lands acquired from the state by complainant's vendor at a sale under the laws of Louisiana of lands forfeited the state for nonpayment of taxes.    The decree was rendered in favor of defendants, dismissing the bill (60 Fed. 974), and thereupon application was made for a rehearing.

E. B. Kruttschnitt, for complainant.

Horace L. Dufour, Asst. City Atty., for defendants.

The point raised by counsel for complainant in the argument on rehearing, that the property could not be assessed while in the hands of the state, was distinctly made and disposed of adversely to this view in the Powers Case, 45 La. Ann. 566, 12 South. 880, on which he relies.    In that case the state acquired the property in 1884.    On page 567 (paragraph 5 of the syllabus of plaintiff's brief) is contained the following: "After property has been adjudged to the state in default of a bidder, the same shall be continued to be assessed in the name of the person to whom it belonged at the date of the sale for the space of one year thereafter only." Act 1882, No. 96, § 60.    In the body of the decision, the court said: "His further averment is that there was no warrant in law for the levy and assessment against said property during the years 1884 to 1892, inclusive; on the theory, doubtless, that no taxes could lawfully be assessed against the property in favor of the state while she was invested with title thereto." See page 569.    Your honor will observe that the assessment was, in that case, not in the name of the state as property of the state, but in the name of Cammack and Schultz; not for one year only, nor assessed separately for taxes from 1880 to 1891. In other words, the assessment was exactly like the one in the case at bar. Under that state of facts the court said: "The remaining question is whether

the two tax sales of the property made to the state in December, 1884, rendered it exempt from taxation during the period of time it was property of the sovereign, and consequently operated the nullity of the tax liens and mortgages securing the taxes of the year 1889, 1890, 1891, not covered by the prescription urged. * * * It likewise appears to be clear that it was the definite purpose of the legislature to make property purchased by the state liable to subsequent taxation, state, parish, and municipal. * * * We are clearly of the opinion that the law in question (i. e. Act No. 80 of 1888) is neither unconstitutional nor illegal, and that the municipal taxes assessed against the property in controversy for the years 1889, 1890, and 1891 are legal, and the inscription thereof in the book of mortgages is legal and valid." The court went on to say that under section 6 of Act No. 80 of 1888, Ory, as "purchaser of the property charged with the payment of municipal taxes that were assessed subsequently to the adjudication to the state, voluntarily assumed responsibility for their payment, but that his vendee, having made no assumption, was not responsible, and therefore was entitled to have the inscriptions erased." The points decided in the Powers Case were the following: (1) That the general assembly may constitutionally provide for property adjudicated to the state being subjected to municipal taxation during the whole time of her proprietorship. (2) That the state, being the owner of property, can sell the same, fix the price, and impose such conditions upon purchasers as she deems fit and proper. (3) That the terms of Act No. 80 of 1888 charge the purchasers from the state with full knowledge that the taxes assessed are assumed as part of the purchase price, and this assumption is a condition of the sale. This places the act of 1888 on exactly the same footing as Act No. 82 of 1884 as interpreted in the Martinez Case, 42 La. Ann. 678, 7 South. 796. (4) That, though Ory had not paid the purchase price he had assumed and with which the property was charged, he could transfer the property to a third person, who could have the tax privileges erased, and urge reasons and defenses of which Ory could not have availed himself. This was in conflict with the positive declaration in the Martinez Case that, where an assumption of taxes formed part of the purchase price, no title could pass until payment of such price. The present contention of the city is that every point above set forth in the Powers Case is still the law, except the last, which has, after full consideration, been overruled in Remick v. Lang (La.) 17 South. 461, in which the court said: "The manifest purpose of the act (No. 82 of 1884) was to enable the state, by selling property it held for unpaid taxes, to realize those taxes. * * * True, the language of the act is, 'he shall assume and promise to pay,' but this cannot be deemed to mean that the state shall have some kind of remedy or mere claim or lien for taxes. * * * If this mere assumption be accepted as the meaning of this act of 1884, the act perishes under the construction, as far as respects the manifest objects of the legislation; that is, to realize the taxes due. Under the construction contended for, the act doubtless is a boon to tax-sale purchasers, but there its benefit ceases. * * * It was in view of the object of this act of 1884 to enable the state to realize its unpaid taxes, and in full view of the result so well illustrated in this case, of a construction which in effect gives up the taxes of the state, that led to the interpretation of the act of 1884 announced in our previous opinion. To that conclusion we adhere. It means that when the state sells property under the act of 1884 it is to get the taxes to realize which the act was passed, and, unless that payment is made, no title passes. This interpretation gives to the act potency to realize from the state cash for its unpaid taxes, instead of mere assumptions of tax-sale purchasers. This interpretation also denies that the purchaser at the tax sale can defeat the payment of the taxes required to be paid under the act of 1884 by the simple expedient of transferring the property. The act is notice to all of the requisite to pass title under it. In our opinion, the tax title is of no validity." Your honor will observe that the supreme court, in reaching this conclusion, had the Powers Case before them, as it is cited as authority in the briefs (page 918, 47 La. Ann.), and was referred to by Justice Watkins, the organ of the court in the Powers Case, in his concurring opinion in Remick v. Lang, as follows: "I place my concurrence in the decree in this case on the ground that the purchaser under Act No. 82 of 1884 failed to pay the taxes that

were assessed on the property since 1880, * * * and which taxes he had assumed as part of the purchase price. This is the exact import of our opinion in Martinez v. State Tax Collectors, 42 La. Ann., 677, 7 South. 796. It was affirmed in State v. Recorder of Mortgages (La.) 12 South. 880." It is perfectly clear from the above that the purpose of the court was to restore the jurisprudence to the position it occupied under the Martinez Case and before the Powers Case, and to finally declare that, where the taxes are part of the purchase price, no title can pass to the purchaser from the state until they are paid; and that he cannot defeat the tax claim by transferring the property to a third person. In other words, no one can give a better title than he had; having none, he can transfer none.

It has been sought by learned counsel for complainant to exclude the act of 1888 from the ruling in Remick v. Lang, because the case had reference to Act No. 82 of 1884. The attempt was ingenious, but it was a distinction without a difference. The two statutes were passed in pursuance of the same policy,—for the purpose of preserving and collecting taxes due to the state and city. The former related to property adjudicated to the state for taxes anterior to 1879, the latter to property adjudicated to the state for taxes since 1880. Both have been judicially decreed to fasten on the purchaser an assumption of payment of taxes as part of the purchase price in the Martinez and Powers Cases, respectively. The act of 1888 is even stronger in its intention to preserve the taxes, for it goes beyond the imposition of an assumption on the part of the purchaser, as in the act of 1884, and in its sections 5 and 6 charges the property itself with the taxes forming part of the purchase price, and makes the sale subject to their payment. It is difficult, therefore, to perceive why the reasoning and conclusion in Remick v. Lang as to the intention and object of the act of 1884 should not apply with equal, nay, with greater, force to the act of 1888.

The plea of prescription of the tax privileges urged by complainant cannot avail. As was said in Case of Martinez: "There is no ground for the plea of prescription; the plaintiff assumed the taxes due on the property. They were part of the purchase price." The city tax being imprescriptible, the complainant and his property would, under this view, be liable for all unpaid city taxes. The same case is authority against complainant's right to question the validity of the assessment made while the property was in the hands of the vendor, the state. On page 680, 42 La. Ann., and page 796, 7 South., it was said: "The plaintiff is estopped from contesting the validity of the assessments. He assumed the payment of the taxes in the name of the person to whom the property was assessed. He purchased under these assessments. He cannot claim to be the owner of the property and repudiate the title under which he claims." Reference is again made to the cases considered by your honor in your opinion in 60 Fed. 974, and also particularly to Reinach v. Duplantier, 46 La. Ann. 151, 15 South. 13.

For further answer to the contention that the law directs the assessment for one year only in the name of the owner, we submit the following: The sale of the property to the state in the Powers Case was made under the provisions of Act No. 96 of 1882, the same act as the one under which some of the property in the case at bar was adjudicated to the state. Under the provisions of section 60 of that act, the property "shall continue to be assessed in the name of the person to whom it belonged at the date of the sale until the lapse of one year from the date of recording the act of sale to the state." The act does not say that it shall not be assessed for more than one year in the name of the owner, but that it shall be for at least that time; the evident purpose of the enactment being that the name of the owner of record should remain on the rolls until the constitutional and legal delay for redemption had expired. There can certainly be deduced from the text of the law no prohibition against the state assessing the property as it deemed proper after the direction of the statute as to one year had been obeyed. It was with those lights before it that the supreme court decided in the Powers Case, in the language already cited, that the property could be legally and constitutionally assessed while in the hands of the state, and that such assessment warranted a tax for which purchaser and property were liable as part of the purchase price. The court then proceeded to maintain the validity of

the taxes and tax privileges for 1889, 1890, 1891, all made long after one year from the date of the adjudication of the property to the state. The analogy with the instant case is absolutely complete and convincing. The provisions of Act No. 98 of 1886, § 62, are identical with those of section 60 of Act No. 96 of 1882 on the same subject-matter, and under which sales to the state were made of some of the property in controversy herein. Both the act of 1882 (section 89) and that of 1886 (section 94) contain the following clause: "That no sale of property for the taxes of the year immediately past due, shall in any manner affect, invalidate or extinguish the claims of the state of any municipality or parish for the taxes due on said property, for any previous year or years, either before or since the adoption of the constitution." It must be remembered in this connection that the deeds in this record from the state to the purchaser declare that the property shall be free of all incumbrances "except all unpaid municipal taxes, and all state, parish, and municipal taxes which have become due and exigible subsequent to the adjudication to the state."

PARLANGE, District Judge. Two points were raised by complainant's counsel during the argument of this matter, viz.: (1) That, under the Powers Case, 45 La. Ann. 572, 12 South. 880, when the state acquires property because of nonpayment of taxes, and subsequently sells the property, the purchaser from the state is liable for the taxes he assumes when he purchases, but the vendee of the purchaser from the state is not liable for such taxes, and takes the property free from the same; (2) that after the state has acquired the property of a delinquent taxpayer, no valid assessment of the same can be made while it belongs to the state, except only for one year immediately after the acquisition by the state. Both points must be decided against the complainant. See Reinach v. Duplantier, 46 La. Ann. 152, 15 South. 13, and Remick v. Lang, 47 La. Ann. 915, 17 South. 461, both of which were decided after I passed upon the present case (60 Fed. 974). The point as to assessment after acquisition by the state was passed upon in the Powers Case and also in Reinach v. Duplantier. The law is clearly stated in the brief of the assistant city attorney. The application for a rehearing is refused.