STATE v. MARY W. CAMP.

May 2, 1900.

Nos. 12,221—(265).

79  343
80  122
80  123

### State Assignment Certificate and Title—Subsequent Sale for Prior Taxes.

Where lands have been sold for taxes, and bid in for the state, and the state subsequently assigns all rights and interests acquired by it under such sale to an individual, who thereafter perfects the title thereunder, the state cannot impeach or impair such title by a resale of the lands for taxes due and unpaid for prior years.

### Title Derived from State Assignment Certificate.

The holder of a "state assignment certificate," who perfects title thereunder, acquires thereby a title in fee simple to the lands covered thereby, free and clear of all prior liens or claims in favor of the state or individuals.

In proceedings in the district court for Hennepin county under Laws 1899, c. 322, to enforce payment of taxes which became delinquent in and prior to the year 1897, Mary W. Camp interposed an answer making defense against taxes for years prior to 1893 on certain land. The case was tried before Harrison, J., who found in favor of defendant, and certified the case to the supreme court for its determination of the point stated in the opinion. Affirmed.

*Louis A. Reed*, County Attorney, and *C. S. Jelley*, for plaintiff.

*M. P. Brewer*, for defendant.

Counsel cited Wass v. Smith, 34 Minn. 304; Irwin v. Trego, 22 Pa. St. 368, 374; Anderson v. Ryder, 46 Cal. 135; Dougherty v. Henarie, 47 Cal. 9; Sayles v. Davis, 22 Wis. 217, 229; Preston v. Van Gorder, 31 Iowa, 250; Emmons v. Bennett (N. D.) 81 N. W. 22.

BROWN, J.

This is a proceeding under the forfeited tax law of 1899 (Laws 1899, c. 322). It was certified to this court by the district court of Hennepin county for our decision upon one question, namely: Where lands have been sold for taxes, and bid in for the state, and the state subsequently assigns all rights and interests acquired by it under such sale to an individual, who thereafter perfects title thereunder, can the state then proceed and resell the lands under the forfeited tax law aforesaid for taxes due and unpaid for prior years? The court below held that it could not, and we sustain that conclusion.

The facts are, in brief, as follows: The state, county, and other taxes were duly assessed against the lands mentioned in the certified record for the year 1893. The same were not paid, became delinquent, and tax judgments therefor were duly and regularly rendered and entered against the same in March, 1895. At the tax sale in May of that year such lands were bid in for the state, there being no bidders at such sale, and, there being no redemption therefrom, the rights of the state were duly assigned to defendant herein, Mary W. Camp, and the proper state assignment certificate was duly issued to her. Said Camp was in no way interested in said lands prior to the issuance of such assignment certificate, and was under no duty or obligation to pay such taxes. She has duly

perfected title to such lands under and by virtue of such sale and assignment certificate, having caused the service of a proper notice of the expiration of redemption, and no redemption ever having been made, she is now the absolute owner of such lands in fee simple. Before such sale for said taxes of 1893, taxes had been duly and regularly levied and assessed against said lands for several years prior thereto, tax judgments had been duly obtained and entered, and the land sold thereunder, for each of such prior years, and duly bid in for the state, and the state has at all times since, and now does, retain the title and rights thereby acquired. No assignment of any of such prior sales has ever been made, nor has there ever been a redemption therefrom. The question to be determined is, having assigned the title and rights acquired by it under and pursuant to the sale for the taxes of 1893 to Camp, and she having proceeded and perfected her title thereunder, and made it absolute, can the state now proceed against the lands for the taxes remaining unpaid for prior years?

Tax liens take priority in the reverse order of other liens. As to all other liens, the first in order of time is, prima facie, superior to those of a later date. In the case of tax liens, however, the "last shall be first and the first last." The general and universal rule is that in proceedings in rem to enforce the payment of taxes, the last tax levied and sought to be enforced is superior and paramount to the lien of all prior taxes, claims, or titles. If a tax title be valid in law and in equity, it operates effectually to clear the title to the land covered by it of all prior liens, claims, or titles, however acquired or obtained. Burroughs, Taxn. 347; Wass v. Smith, 34 Minn. 304, 25 N. W. 605; 2 Desty, Taxn. 849, and cases cited.

This general rule is recognized by counsel for the state, but it is contended by them that the interests of the state in the matter of collecting its revenue require and make it proper to except the state from its operation. Counsel are quite right. The interests of the state would be best subserved and protected by exempting it from the operation of the rule. But such exemption cannot be made unless authorized by statute. The rule applies to the state as well as to an individual (25 Am. & Eng. Enc. 277, and cases cited in the notes; Dougherty v. Henarie, 47 Cal. 9; Irwin v. Trego, 22 Pa. St.

368, 375; Law v. People, 116 Ill. 244, 246, 4 N. E. 845); and, as we view the subject, the whole controversy must be disposed of in the light and by the guide of our statutes. If we do not there find a remedy to protect the interests of the state, the question must be referred to the legislature. If, as properly construed and interpreted, the statutes furnish such a broad and safe retreat for the "tax dodger," as pictured by counsel, the remedy is with the other branch of the government. A very few changes will serve effectually to bring such "dodgers" into line with honest taxpayers. We may also agree with counsel for the state that, when a certificate of sale has been duly assigned by the state, the state parts only with the interest it has in the land; but we cannot concur in the further contention that it retains the right to enforce prior taxes against the same land as against a title acquired and perfected under such assignment. If the state permits the assignment certificate to ripen into an adverse title, all its rights as to prior taxes must be held to have been lost. See authorities supra.

The lien of taxes under our statutes dates as of May 1, and the last tax levied takes precedence over the lien of all prior taxes. Regular and orderly proceedings looking to the enforcement of such taxes are provided for from the inception or levy of the tax to the entry of judgment and sale thereunder. In all cases where there are no bidders at the tax judgment sale the lands are struck off to and bid in for the state. The state may subsequently assign its rights, as was done in this instance. And G. S. 1894, § 1600, provides that

"The taxes for subsequent years shall be levied on property so sold or bid in for the state, in the same manner as though the sale had not been made."

This statute makes it the duty of the officers in charge of the administration of the tax laws to levy taxes on land sold to an actual purchaser or bid in for the state, each succeeding year, in the same manner as though no such sale had been made. It being thus made proper to levy a tax on land held by the state, it must be held proper, in the natural order of statutory requirements, that such officers proceed with such taxes to judgment and sale. It

was held by this court in Berglund v. Graves, 72 Minn. 148, 75 N. W. 118, that it is not necessary for the state to proceed to judgment and sale when the land stands bid in for the state, and in Countryman v. Wasson, 78 Minn. 244, 80 N. W. 973, that it might do so. If the executive officers of the state would follow the decision in the Berglund case, the interests of the state would be fully protected, and no injuries follow, except, perhaps, such as might arise and result from defective tax judgments or sales,—a condition not to be presumed. The rights of the state in and to all subsequent taxes, where the land stands bid in for the state, are expressly preserved by the redemption statutes, which require the redemptioner to pay the amount for which the lands were bid in, together with all subsequent taxes, penalties, and costs.

It is suggested that the "tax dodger" may again find comfort here, for it is said, if the tax judgment or sale be defective, he will permit subsequent taxes to accumulate, and never pay them. In case of a defective judgment or sale this might prove true. To avoid it, the state must obtain valid judgments. The courts cannot be looked to to enlarge statutes, by construction and interpretation, to intercept and obstruct those who make a study to avoid the payment of taxes. The duty of enacting revenue laws is with the legislature, not with the courts.

It is held in Countryman v. Wasson, supra, that the state may, at its option, proceed to judgment and sale of lands for subsequent taxes in cases where the same stand bid in in the name of the state, but that such sale does not have the effect of devesting the state of its liens for prior unpaid taxes. If the proper construction of that decision be that the holder of a state assignment certificate may not proceed under the statutes, and perfect a title thereunder which will be superior to all other prior titles or liens, whether held by the state or by an individual, we cannot follow it. The statutes provide (sections 1582, 1593, 1601) that a tax judgment shall bind "every estate, right, title, interest, claim or lien, in law or equity, in, to or on such piece or parcel of land, of every person, company, or corporation," and that a purchaser at a tax judgment sale, or one who has perfected title under a state assignment certificate, shall acquire thereby a title in fee simple. This is in

accordance with the general rule of law on the subject, and, as we have seen, binds the state as well as individuals, in the absence of some statute continuing its lien for prior taxes. There is no exception or provision of that kind in our statutes. The precise point here under consideration was not involved in the Countryman case. The main contention in that case was that the state had no power or authority, where lands stand bid in for the state, to proceed to a judgment and sale as to subsequent taxes. The court decided the question adversely to such contention, and what is there said on the point here in hand may be said to be obiter dicta. That the learned justice of this court who wrote the opinion in that case subsequently doubted the correctness of such dicta is shown by his memoradum filed on the motion for a reargument.

As stated, this question must be determined in the light of our statutes. They will be searched in vain for any provision to assist the state out of its present dilemma. Where lands have been bid in for the state, subsequent taxes must be levied and assessed as though no such sale had been made. If the subsequent tax levy result in a judgment and second sale to the state, and the state assign its rights thereunder, it must be held to have lost all right to enforce prior taxes, in view of G. S. 1894, §§ 1582, 1593, 1601, supra, which provide that a title thus acquired is superior to all prior liens and claims.

Order affirmed.

START, C. J. (dissenting).

I dissent. On December 4, 1899, this court held:

"Where land has been bid in for the state at a tax sale, and has not been redeemed, or the interest of the state assigned, the state may obtain a tax judgment and sell the land for the taxes for subsequent years; and under such circumstances the sale will not extinguish the lien of the state for the prior taxes for which it was bid in." Countryman v. Wasson, 78 Minn. 245, 80 N. W. 973.

This seems to me to be decisive of the case at bar, for, as expressly held in the case cited,

"When the state levied taxes for subsequent years, it was not taxing its own interest in the land, but merely the interest of the

delinquent taxpayers, and when it sold the land for the tax that interest was all it sold." Id.

Therefore a purchaser at such a subsequent sale would take his title subject to the paramount lien of the state as to him for the prior taxes. The state retaining such paramount lien, it necessarily follows that it may enforce the lien by a sale of the land, notwithstanding the sale thereof for subsequent taxes. But it is said in the majority opinion that this is obiter dicta. Such is not my understanding. It is true that the question to be decided in that case was whether, in cases where land had been bid in by the state at a tax sale, and had not been redeemed, or the interest of the state assigned, a tax judgment and sale of the land for the taxes for subsequent years were authorized by the statute. A determination of this question involved a construction of G. S. 1894, § 1600, which is in these words:

"The taxes for subsequent years shall be levied on property so sold, or bid in for the state, in the same manner as though the sale had not been made; and if the purchaser or assignee of the state shall pay such taxes, the amount thereof, with interest from the date of payment after they shall have become delinquent, at the same rate as is provided upon the amount bid on the sale, shall be added to and be a part of the money necessary to be paid for redemption from sale."

It was urged in support of the contention that such subsequent sales were not authorized; that, if made, their legal effect would be to extinguish the lien of the state for the taxes of prior years; hence it was unthinkable to impute to the legislature such an intention. Therefore, for the purpose of ascertaining the legislative intention, it became necessary to determine what the effect, if any, of such a sale would be upon the lien of the state for the taxes of prior years; and the court necessarily determined the question as a basis for its conclusion that the statute did authorize such sale. The two propositions decided, as stated in the subdivision of the syllabus I have quoted, should stand or fall together. The decision ought to be followed as a whole or entirely overruled. But to affirm the proposition as to the authority to make the sale, and overrule or disregard the other proposition as to the effect of such

sale, as the majority opinion in effect does, will, in my judgment, be most disastrous to the interests of the state. I am not clear that the main proposition in the Countryman case was correctly decided. Upon further consideration I am inclined to the opinion that section 1600 does not authorize a sale of the land for the taxes of subsequent years where the state has bid in the land for the taxes of a prior year, and still retains its interest so acquired, but that the taxes for subsequent years are to be levied as though no sale had been made to the state; and the amount thereof, with interest, is to be added or tacked to the lien of the state on the land by virtue of such sale to it, and collected with it. If this construction of the statute were to be adopted now, it would lead to the conclusion that the sale for the subsequent taxes was void, and hence the lien of the state for prior taxes remained intact. However this may be, I am of the opinion that the Countryman case should be adhered to on the doctrine of stare decisis.