STATE v. ORRIN KIPP.[1]

June 1, 1900.

Nos. 11,994—(20).

**Taxes—Purchaser at Tax Sale—Enforcement of Prior Tax after Void Sale.**

A purchaser at a tax sale, as well as a person who procures an assignment from the state after lands have been bid in at a tax sale, takes a certificate of purchase or an assignment subject to the statutory right of the state to enforce the collection of a prior tax, when refundment has been made on account of a void sale as provided in G. S. 1894, §§ 1610, 1697.

Proceedings in the district court for Ramsey county to enforce payment of delinquent taxes on real estate. Orrin Kipp interposed an answer, and the case was tried before Otis, J., who found in favor of plaintiff, and on application of defendant certified to the supreme court for its determination the question whether the decision of the court overruling the objections and answer of defendant and directing judgment against the real estate was justified by the statement of facts and the whole record. Affirmed.

*S. & O. Kipp*, for defendant.

G. S. 1894, § 1697, does not absolve the tax purchaser from his duty to pay all subsequent taxes, and thus protect his claim against subsequent tax purchasers. Having failed to perform his duty by paying subsequent taxes, he had forfeited all rights. The object of this statute was to encourage persons to become purchasers, so that the revenue should promptly come into the treasury. This statute was not intended as a protection to a prior tax purchaser as against a subsequent purchaser, and at his expense. It was intended to protect the last tax purchaser, and him alone, and thus secure bidders at each succeeding tax sale. Robbins v. Barron, 32 Mich. 36, 39, 34 Mich. 517.

The tax judgment directed to be entered in this proceeding is against the land, and constitutes a lien thereon as against the

[1] Reported in 82 N. W. 1114.

estate and interest of every person whatsoever, and in effect declares the rights and title of defendant acquired by his purchase for the 1893 tax subordinate to the judgment for the 1892 tax, and to any title acquired by a purchaser at the tax sale directed to be held thereunder. Such would be the necessary effect of the judgment, whether entered upon default or after answer. Emmons v. Bennett (N. D.) 81 N. W. 22. The whole question is res judicata by the tax judgment of 1895, and the state is estopped. A later or junior assessment of taxes, and the tax sale upon it, are paramount to and take precedence of a senior assessment and the sale had upon it. Wass v. Smith, 34 Minn. 304; Cooley, Taxn. 445.

In some states the tax sale merely transfers to the tax purchaser the estate of the person assessed, whatever the estate may be. Such a system of collecting taxes is directly antagonistic to that of Minnesota, and the decisions applicable to each must not be confounded. Mayor v. Cowan, 78 Tenn. 209. It is said that every tax deed relates back to and takes its status, not from the date of the judgment or the tax sale, but as of the date of the tax lien. Anderson v. Ryder, 46 Cal. 134; Chandler v. Dunn, 50 Cal. 15. This rule was adopted in Wass v. Smith, supra, and is now the law of this state. The decision in Countryman v. Wasson, 78 Minn. 244, is erroneous. The interest which a purchaser of lands at a tax sale acquires is, in the absence of a statute to the contrary, freed from all liability for delinquent taxes of previous years, and a tax deed regularly issued cuts off all interests acquired by purchasers at tax sales for taxes prior to that upon which the tax deed is based. Emmons v. Bennett, supra. See Wass v. Smith, supra.

G. S. 1894, § 1593, prescribes the form of the tax certificate, which conveys "the said piece or parcel of land, in fee simple, to said ————, his heirs and assigns, forever, subject to redemption as provided by law." Section 1593 provides: "Such certificate, in case the land shall not be redeemed, shall pass to the purchaser the estate therein expressed, without any other act or deed whatever." And section 1594 provides that such certificates shall be prima facie evidence "of title in the grantee therein." A fee simple is the largest possible estate which a man can have, being an absolute estate in perpetuity. 1 Bouvier, Law Dict. 1697. See Brewer v. Dis-

trict, 5 Mackey (D. C.) 274; Thorington v. City, 88 Ala. 548; Black, Tax Tit. § 427, note; Irwin v. Trego, 22 Pa. St. 368, 375; Sayles v. Davis, 22 Wis. 225, 229; Board v. Linscott, 30 Kan. 240; Langley v. Chapin, 134 Mass. 82; Dougherty v. Henarie, 47 Cal. 9; Preston v. Van Gorder, 31 Iowa, 250; 23 Am. & Eng. Enc. 277; Burroughs, Taxn. 347, 348; 2 Desty, Taxn. 849; Mayor v. Cowan, supra.

*W. B. Douglas*, Attorney General, *Horace E. Bigelow*, County Attorney, and *F. W. Zollman*, Assistant County Attorney, for plaintiff.

COLLINS, J.

The tax title of defendant, Kipp, is for the tax of 1893; tax judgment March 21, 1895; tax sale May 7, 1895, at which time a certificate was issued to defendant's assignor. It was assigned to defendant October 22, 1895, the notice of expiration of redemption was issued December 9, 1898, and the time to redeem expired February 12, 1899. It is conceded these tax proceedings are all regular and valid, that defendant claims the title in fee thereunder, and has paid all the subsequent taxes. The land had been sold at the tax sale, May 8, 1894, for the tax of 1892, bid in for $90.53, and the right of the state assigned September 27, 1894, to the Merchants' National Bank for $94.88. In May, 1898, the money so paid, and the interest, amounting to $130.43, was refunded to the bank out of the county treasury by direction of the state auditor, under G. S. 1894, § 1697. The county auditor inserted in the 1898 delinquent tax list filed January 20, 1899, the 1897 tax having been paid, a claim for $90.53, the original tax of 1892, to which defendant filed his answer and objections, and after trial the court overruled the answer and objections, and directed judgment for the amount of taxes of 1892, notwithstanding the answer, and upon application of defendant the trial court certified the whole record to this court, and submitted the question whether the decision is justified by the facts found.

It will be seen from this statement of facts that the refundment to the bank had been made some months prior to the issuance of the notice of the expiration of the period of redemption on December 9, 1898, and that the rights of the state, if any there were,

had then been acquired and fixed. By the provisions of G. S. 1894, § 1610, whenever a tax sale has been declared void by a judgment of the court, the reason for such judgment being stated, and in all cases when a tax sale is set aside, the money paid by a purchaser at the sale or by an assignee of the state is to be returned out of the county treasury. It is there enacted that

"Such proceedings shall not operate as a payment or cancellation of any tax included in the judgment or refundment, but the same shall stand as originally extended against the property, and, with all accruing penalties, interest, and costs, be included with the taxes thereon for the current year in the next delinquent tax sale."

In section 1697 it is provided that refundment may be made under other circumstances, and further:

"And the same proceedings shall be had for reassessing said property for said taxes or again selling the same as provided by law in other cases of void assessment or sales."

The refundment in the case at bar was made under the provisions of section 1697, and it is evident that application of sections 1610 and 1697 is general, is qualified by nothing except the statute of limitations, and that any other construction would arbitrarily limit that statute. And it is also evident that the defendant's rights were fixed by the law as it was when his assignor took the tax certificate in May, 1895. The sections hereinbefore referred to and quoted from were then in force, and the purchaser at the sale for the taxes of 1893, held in May, 1895, took the certificate subject to these sections, and was bound by them. Defendant, Kipp, as a purchaser of the certificate, assumed the same burden when he obtained an assignment thereof. And he could not nullify those sections, or deprive the state of its statutory right to enforce its lien for taxes in case of a void sale, by issuing and serving a notice to redeem.

Reference in one of the briefs has been made to the recent case of State v. Camp, 79 Minn. 343, 82 N. W. 645. The question there was whether, where lands have been sold for taxes and bid in for the state, and the state subsequently assigns all rights and interests acquired by it under such sale to an individual, who thereafter

perfects title thereunder, the state can impeach or impair such title by a resale of the lands for taxes due and unpaid for prior years. And it was held that the state could not thus impeach or impair such title. It was there said: "And, as we view the subject, the whole controversy must be disposed of in the light and by the guide of our statutes. * * * They will be searched in vain for any provision to assist the state out of its present dilemma." In other words, the lien or right of the state to enforce the senior tax was lost because the state had not been exempted by statute from the general rule that tax liens take priority in the reverse order of other liens. But where the tax sale is void, under the decisions of our courts, or where it has itself been held void, and for that reason a refundment has been made under either of the sections before mentioned, the state is expressly authorized again to proceed. It is in direct terms exempted from the operation of the general rule which governed the Camp case in the absence of a statute. The disposition of these cases is in exact harmony. In State v. Camp there was no statute which protected or aided the state as to its claim for the unpaid senior tax. In this there is an unambiguous and explicit statute, which fully authorizes and empowers the state again to proceed to enforce the collection of the senior tax.

We answer the certified question in the affirmative, and the case is remanded, with directions to enter judgment in accordance with the order of the district court.