OAKLAND CEMETERY ASSOCIATION v. COUNTY OF RAMSEY.[1]

June 29, 1906.

Nos. 14,580—(6[2], 1[3]).

**Taxes Paid under Protest.**

When recovery is allowed for taxes paid under protest, the element of coercion must be found. In the absence of present and potential compulsion, mere protest is not sufficient. In this case the payment was *held* not to have been voluntary, but under duress.

**Record of Deed.**

One who by force of the statute is unable to place on record a deed of conveyance by which he has acquired title to real estate, because of taxes legal in their inception, but illegally demanded, may pay such taxes under protest to enable him to record his deed, and recover them in a subsequent action from the state. In this case, the remedy pursued by a party paying taxes under duress and with protest is *held* to have been proper.

**Priority of Tax Titles.**

A tax title based on a later tax sale on an earlier tax lien may prevail over a tax title based on an earlier sale under a later lien. The purchaser of a tax certificate under chapter 11, G. S. 1878, and chapter 11, G. S. 1894, may be required to protect his interest, not only as against subsequent taxes, but also as against prior taxes. The relevant parts of sections 1610, 1631, and 1697, G. S. 1894, authorized the state to proceed and enforce the lien of a tax delinquent and unpaid subsequently to a prior sale on a later lien. State v. Kipp, 80 Minn. 119, followed and extended.

**Same.**

The holder of a valid state assignment certificate, based on a sale for the taxes of 1896 made in 1898, which was properly perfected by service of notice to eliminate the right of redemption, acquires a title upon the expiration of the time of redemption, subject to being divested by a tax title based on prior taxes for 1892, resulting in a void judgment in 1894, on which a forfeited sale was made in 1900 under chapter 322, p. 410, of the Laws of 1899.

Appeal by plaintiff from an order of the district court for Ramsey county, Olin B. Lewis, J., denying a motion for a new trial. Affirmed.

*William G. White,* for appellant.

*Thos. R. Kane* and *O. H. O'Neill,* for respondent.

[1]Reported in 108 N. W. 857; 109 N. W. 237.

[2] April, 1906, term calendar.                    [3] October, 1906, term calendar.

JAGGARD, J.

This was an action brought by the plaintiff and appellant against the defendant and respondent to recover certain taxes alleged to have been paid under duress. The court found for the defendant. Plaintiff appealed from an order denying a new trial.

The trial court in a carefully prepared memorandum states the facts and the principal issues argued before it and presented by this appeal, as follows:

> Taxes for the year 1896 were duly levied against this property, and in default of payment judgment was duly rendered and the premises sold thereunder and bid in by the state in May, 1898. There being no bidders at the sale, and there being no redemption therefrom, the rights of the state therein were in November, 1899, duly assigned to the National Bond & Security Company, plaintiff's grantors, which prior thereto had no interest in said premises. The National Bond & Security Company duly perfected title to these premises under such sale and assignment certificate by causing proper notices of the expiration of the time of redemption to be given, and, no redemption having been made, thus acquired the fee title. Prior to the sale of said premises for the taxes of 1896, taxes for the year 1892 had been duly levied and assessed, and judgment therefor was entered in this court in May, 1894, which judgment is void because the county commissioners never properly designated a newspaper in which to publish the delinquent list for that year. At the time of making the list for delinquent taxes for the year 1898—that is, in January, 1900—the auditor, pursuant to chapter 322, p. 410, Laws 1899, duly appended thereto and included therein the taxes upon said premises for the year 1892, as provided by law, and at the sale under judgment therefor, there being no other bidders, the land was bid in by the state in its name in May, 1900, and, no redemption having been made, the state is still the owner of the interest thus acquired.

1. The preliminary question upon this appeal is the correctness of defendant's argument for not sustaining this appeal, namely: The following necessary facts did not appear, to wit: That the payment of taxes in question was involuntary and made under such circumstan-

ces as to constitute duress, and that the taxes were unjust and illegal. It insisted that the property rights of plaintiff were never in jeopardy, because, as the court finds, the plaintiff reserved from the consideration price to be paid his grantor enough to pay the taxes under protest and agreed to account for such sum to his grantor in case of recovery in this action. We think the agreement between the plaintiff and his grantor was immaterial to the present issue. If the plaintiff was entitled to recover, what it might do with the money recovered is no concern of public authorities. The agreement between the plaintiff and his grantor was a private one. Neither that agreement nor what might be done under it affected the right of the plaintiff to record his deed.

It is undoubted, as the defendant contends, that to warrant a recovery for taxes paid under protest the element of coercion must be found, and that, in the absence of actual, present and potential compulsion payment under protest is not sufficient. But "the difficulty lies in determining whether in any particular case the payment is to be deemed as compulsory or voluntary. * * * It may be stated as a general proposition that a payment under compulsion of money unlawfully demanded does not conclude the party paying; he by proper protest indicating that he pays by compulsion, and not voluntarily. He may recover it again." Dickinson, J., in State v. Nelson, 41 Minn. 25, 27, 42 N. W. 548, 4 L. R. A. 300. It was distinctly held in that case that one who by force of the statute is unable to place on record a deed of conveyance by which he has acquired title to real estate, by reason of illegal taxes being charged upon the land, may pay such taxes in order to secure the recording of his deed, without such payment being deemed voluntary. Therefore there was duress in this case. The last case cited disposes also of defendant's further contention that there could be no recovery unless the taxes were illegal. The general rule is that one paying under duress and with protest "money unlawfully demanded" may recover it again.

2. A further contention of the defendant, which was that, to entitle the plaintiff to recover, it must also appear that the plaintiff or its grantor pursued the ordinary remedies provided by the statute to be relieved from the payment of the so-called illegal tax, is without merit. Falvey v. Board of Co. Commrs. of Hennepin County, 76 Minn. 257; 79 N. W. 302, which he cites, does not support his proposition in this

case. There the tax alleged to have been paid under duress, and which was paid under protest, was not yet delinquent. No proceedings to enforce its collection had been commenced. Much less had any judgment been rendered against the land. The court refused to permit the party seeking to recover to ignore the remedy given by statute to defend against illegal taxes paid with knowledge of all the facts and then to recover them by suit. There was, therefore, no compulsion or coercion and the character of the payment was not affected by his protest. In the case at bar the taxes had been delinquent, proceedings to enforce their collection had been commenced, judgment had been rendered, and a sale had been made, when they were paid.

The objection of the defendant is not addressed to the failure of the plaintiff to resort to mandamus, nor does this point seem to have been raised in the court below. While that fact would not prevent the present consideration of the question, we are not inclined to decide it, because, inter alia, of the considerations referred to in State v. Weld, 66 Minn. 219, 222, 68 N. W. 1068. That case involved a mandamus to compel the county auditor to indorse "Taxes paid and transfer entered" upon a deed. Judge Buck there said: "The auditor must act promptly in such matters, and ascertain, from the face and contents of the deed or instrument and from the books and records of his office, if there be delinquent taxes upon the land described therein, and make or refuse his notation accordingly. While the auditor is not a court to finally adjudicate upon the ownership or interests affecting real property described in a deed or instrument so presented to him, yet he must act upon the apparent right or interest therein appearing, and, having done this, he has presumptively performed his duty. We do not hold that, if the auditor should err in refusing to make notation in a proper case, the party would be without remedy."

3. The essential question on the merits is accordingly presented for consideration. That question is this: Was the purchaser of a tax certificate under the revenue system provided for by chapter 11 of the General Statutes of 1878 and of the General Statutes of 1894 required to protect his interest thereunder as against taxes levied and assessed prior to the year in which the tax under the sale for which he claims title was levied and assessed? In other words, did a tax title based on

an earlier sale under a later tax lien prevail over a later tax sale on an earlier lien?

On the one hand, the arguments for holding that tax certificate based on a later lien confers an interest not affected by a later sale on an earlier lien are many and cogent. A tax title is generally regarded as a definite grant from the sovereignty which bars all other titles of record or otherwise and imports an absolute paramount title as against the world. It is generally accepted that a tax title is a new title, which takes its status, not from the date of the tax judgment sale, but from the date of the tax lien. This accords with the sound public policy of securing prompt receipt of public revenue by encouraging bidders at tax sales and of preventing the accumulation in the hands of the state of idle lands forfeited to it because of nonpayment of taxes. In Jarvis v. Peck, 19 Wis. 84, 85, Dickson, J., said: "Of course, a valid sale and conveyance under a junior assessment cut off all former (tax) titles or liens." To the same effect see Sayles v. Davis, 22 Wis. 217, 225, 230; Buckley's Lessees v. Osborn, 8 Ohio, 181; Emmons v. Bennett, 9 N. D. 131, 81 N. W. 22; Wall v. District of Columbia, 6 Mackey (D. C.) 194; Robbins v. Barron, 32 Mich. 36; Meldahl v. Dobbin, 8 N. D. 115, 77 N. W. 280; Preston v. Van Gorder, 31 Iowa, 250; Bowman v. Thompson, 36 Iowa, 505; Irwin v. Trego, 22 Pa. St. 368; Huzzard v. Trego, 35 Pa. St. 9; Law v. People, 116 Ill. 244, 4 N. E. 845; Anderson v. Rider, 46 Cal. 135; Keen v. Sheehan, 154 Mass. 208, 28 N. E. 150.

This rule has been followed and applied by this court. Wass v. Smith, 34 Minn. 304, 25 N. W. 605; State v. Camp, 79 Minn. 343, 82 N. W. 645. It is consistent with many relevant statutory provisions as to the nature of the interest transferred by a tax deed with which no other construction can be fully reconciled. G. S. 1894, §§ 1582, 1593, 1599, 1601, 1616, 1617. There is an especial reason why this should be the rule in this state because of the inadequacy of the means which the statutes provided for determining the amount of anterior taxes would seek to determine that amount. Croswell v. Benton, 54 Minn. 264, 55 N. W. 1125.

On the other hand, there is a strong argument for the rule which would enable the state to realize out of the lands all taxes and assessments which have been assessed against it, and which would take away

from persons seeking to evade the payment of lawful public charges by the device of asserting title under a later lien and thereby cutting out prior taxes. Well-considered authorities recognize that the question is primarily one of statutory construction, that there is no intrinsic reason why the statutes should not make the purchaser at a tax sale responsible for former taxes, and that, where in fact upon a reasonable construction of relevant statutory provisions it appears that the legislature has so provided, it is the duty of the courts to enforce the remedy. See Western Land & E. Co. v. Guinault (C. C.) 38 Fed. 287; Gulf States Land Co. v. Parker (C. C.) 60 Fed. 974; Gulf States Land & Imp. Co. v. Parker (C. C.) 72 Fed. 399; Justice v. City, 101 Ind. 326; Adams v. Osgood, 42 Neb. 450, 60 N. W. 869; State v. Werner, 10 Mo. App. 41; Smith v. Laumier, 84 Mo. 672; Mayor v. Cowan, 78 Tenn. 209.

This principle was in a measure applied by this court in State v. Kipp, 80 Minn. 119, 82 N. W. 1114. The syllabus in that case reads as follows: "A purchaser at a tax sale, as well as a person who procures an assignment from the state after lands have been bid in at a tax sale, takes a certificate of purchase or an assignment subject to the statutory right of the state to enforce the collection of a prior tax, when refundment has been made on account of a void sale as provided in G. S. 1894, §§ 1610, 1697." The last part of that syllabus summarizes the effect, but does not accurately reproduce the doctrine, of the opinion. Justice Collins in that case said: "The lien or right of the state to enforce the senior tax was lost because the state had not been exempted by statute from the general rule that tax liens take priority in the reverse order of other liens. But where the tax sale is void under the decisions of our courts, or where it has itself been held void, and for that reason a refundment has been made under either of the sections before mentioned (sections 1610, 1697), the state is expressly authorized again to proceed. It is in direct terms exempted from the operation of the general rule which governed the Camp case in the absence of a statute. The disposition of these cases is in exact harmony. In State v. Camp there was no statute which protected or aided the state as to its claim for the unpaid senior tax. In this there is an unambiguous and explicit statute, which fully authorizes and empowers the state again to proceed and enforce the collection of the senior tax."

In no appeal on this subject to this court has its attention ever been directed to this part of section 1631, namely:

> If any tax on any property liable to taxation is prevented from being collected for any year or years by reason of any erroneous proceedings or other cause the amount of such tax which such property should have paid shall be added to the tax on such property for the current year.

Within the rule laid down in State v. Kipp, this is "an unambiguous and explicit provision which fully authorizes and empowers the state to proceed and enforce the collection of a senior tax," just as clearly as was authorized so to do by the relevant portion of sections 1610 and 1697. That previous proceedings to collect the taxes had been instituted by the state, and that in course of them land had been bid in by the state and title had accrued to the state, does not constitute payment of taxes (G. S. 1894, §§ 1606, 1607; Mulvey v. Tozer, 40 Minn. 384, 386, 42 N. W. 290), nor estop the state from waiving such previous proceedings and such sales and titles, nor prevent the state from commencing further proceedings, making further sales, and creating further titles for the same tax as to the same land in subsequent years as for uncollected taxes. The law may provide, as this part of section 1631 provided, for the sale of all land upon which taxes for previous years had become delinquent and had not been satisfied by payment, redemption, or sale of land to actual purchasers. Knudson v. Curley, 30 Minn. 433, 435, 15 N. W. 873; Farnham v. Jones, 32 Minn. 7, 19 N. W. 83; State v. Baldwin, 62 Minn. 518, 65 N. W. 80, and see Croswell v. Benton, 54 Minn. 264, 55 N. W. 1125; McHenry v. Kidder, 8 N. D. 413, 79 N. W. 875; League v. State (Tex. Civ. App.) 56 S. W. 262; Clarke v. Strickland, Fed. Cas. No. 2,864; Hodgdon v. Burleigh (C. C.) 4 Fed. 111.

A later tax judgment does not of necessity preclude the right of the state to assert rights based upon an assessment for earlier taxes. See State v. Weyerhauser, 72 Minn. 519, 75 N. W. 718; Weyerhauser v. State, 176 U. S. 550, 20 Sup. Ct. 485, 44 L. Ed. 583. In Countryman v. Wasson, 78 Minn. 245, 80 N. W. 973, 81 N. W. 213, it was held that, where land has been bid in for the state at a tax sale, and has not been redeemed, or the interest of the state assigned, the state may obtain a tax judgment and sell the land for the taxes for subsequent years; and

under such circumstances the sale will not extinguish the lien of the state for the prior taxes for which it was bid in.

It is plain that there is good reason and specific authority for deciding this case either way, that it is not possible to decide it without doing violence to just and weighty considerations, and that the balance in favor of either conclusion is not pronounced. Nor are we without grave doubt on the subject. But upon the whole we conclude, in view of the statutory provisions and decisions referred to, that the purchaser of a tax title may be required to protect his interest, not only as against all subsequent taxes, but also against anterior taxes, and that a tax title based on a sale under a later tax may prevail over a later tax sale on an earlier tax lien, and that in this case the ruling of the trial court was correct.

Order affirmed.

A reargument having been granted, the following opinions were filed on October 26, 1906.

JAGGARD, J.

The first consideration urged by counsel for the plaintiff and appellant on reargument was that as a general rule of law the tax lien last in time is first in right, and that this rule applies to the state as well as to an individual. Inter alia, he cited Gates v. Keigher, 99 Minn. 138, 108 N. W. 860. It was there held that where lands have been sold for taxes, and the purchaser thereafter perfected his title thereunder, the state could not impeach such title by resale of land for taxes due and unpaid for prior years. The distinction between that case and the one at bar is as plain as it is substantial. In this case the purchaser had not perfected his title before the resale of lands. In Gates v. Keigher, he had. After a careful reconsideration of the question, we have concluded to adhere to the conclusion on this point announced in the original decision, namely, that whether a later sale on an earlier tax lien should take precedence over an earlier sale on a later lien is primarily a question of statutory construction; that the statutes of this state, in certain cases have so provided; and that the case at bar is one of these cases by virtue of section 1631, G. S. 1894.

The second point, pressed with great ability and earnestness upon re-

argument, was that chapter 322, p. 410, Laws 1899, could not operate to make the lien of the 1892 tax superior in right to the later liens upon which plaintiff's title is based. The argument was that this law did not change the usual rule as to priority of tax liens and could not constitutionally affect the rights of the plaintiff under his tax certificate, because these certificates constituted a contract with the state, the obligation of which could not be impaired by subsequent legislative change, and by this law of 1899 in particular.

While the matter is not without doubt, we have concluded that the proper view to be taken on this matter is as follows: The legal effect of the portion of section 1631, quoted in full in the original opinion, was to provide for two things, namely: (1) If any tax on any property liable to taxation is prevented from being collected by reason of any erroneous proceeding, or other cause, then the state shall have a lien on the property for such tax which may be subsequently enforced; (2) that this lien may be enforced by adding to the tax on such property for the current year the previous uncollected tax. In brief, by this section the priority of liens was determined and the state was authorized to collect the tax in the way specified. It was competent for the legislature to provide other means for the enforcement of that uncollected tax; so to do was merely to give an additional remedy. The addition was to the law adjective only, and not to the law substantive. It is elementary that such remedial legislation is contitutional, and not void as an attempt to take property without due process of law. It was competent for the state to proceed to collect its revenues by means of the new remedy. It was therefore not legally significant that the remedy provided by section 1631 was not pursued.

A further question was raised by the plaintiff's insistence that the right of the state to enforce its lien under section 1631, even if it otherwise existed, was barred by the statute of limitations before the plaintiff made its payment in this case. The facts upon which this proposition rested are not clear upon the record. The burden rested upon the plaintiff to affirmatively show the bar of the statute; this it has failed to do. The reason for this, which the paper book suggests, is that in point of fact the plaintiff could not show the necessary facts, and that the proceeding by the state to enforce its lien was commenced a few days, at least, before the six years statute had run.

We have considered the other points raised on the reargument, which appear to call for no special amplification here, and conclude to adhere to the conclusion reached in the previous opinion.

Order affirmed.

LEWIS, J. (concurring.)

In my judgment this case was correctly decided and the decision should be adhered to, but I prefer to place my decision upon somewhat different grounds.

In my opinion, it was the legislative intent, as expressed in section 1610, G. S. 1894, to preserve or renew the state's lien for the taxes levied in prior years, whenever the tax sale for such prior years is adjudged void. In the case at bar the state had bid in the premises at the tax sale for the 1892 taxes, but had never made any assignment. So the real question presented here is: The tax sale for the prior years having been declared void by a judgment of the court entered May 5, 1894, was the state's lien for such prior years revived and enforceable notwithstanding no assignment had been made? I think so, within the first provision of section 1610, viz.: "When any tax sale is declared void by judgment of court, such judgment shall state for what reason such sale is annulled." And the subsequent provision, commencing: "Such proceedings shall not operate as a payment," etc. There is no distinction in principle between this case and cases where the state had assigned, or cases where the premises had been bid in by a purchaser and refundment had followed. That it was the intention to preserve the state's lien for taxes in all cases of void sales, is further evidenced by section 1697, which provides that the county auditor may refund the amount paid for a tax certificate when satisfied that the sale is void under a decision of the supreme court, "and the same proceedings shall be had for reassessing said property for said taxes, or again selling the same as provided by law in other cases of void assessment of sales."

Section 1631 has much wider scope and covers cases where there has been an entire omission of assessment, as well as cases where taxes have been prevented from collection by some erroneous proceedings, without reference to a judicial determination. Harmonizing all of these provisions, I am inclined to the opinion that section 1631 is in-

tended to apply to instances not otherwise covered. However that may be, it is not necessary in this case to resort to it; ample remedy having been provided by section 1610.

I concur in the holding that the legislature had power to provide for the enforcement of such taxes by the law of 1899, rather than leave the state to the statutory method of including them with the taxes for the current year in the next delinquent tax sale.