MINNESOTA DEBENTURE COMPANY v. HUGH R. SCOTT and Others.[1]

October 23, 1908.

Nos. 15,630—(119).[2]

**Tax Sale—Redemption of Land Bid in by State.**

1. Sections 936–940, R. L. 1905, are here construed, and *held* to provide that lands bid in to the state and not assigned to purchasers within three years from the sale at which they are offered to purchasers at the highest price are expressly subject to redemption by the owner or other person duly and properly entitled to redeem. Upon redemption the person redeeming must pay the full consideration of the sale, but is

[1] Reported in 119 N. W. 391.          [2] April, 1908, term calendar.

entitled to a return from the state of the surplus above the amount due the state.

**Resale for Prior Taxes.**

2. Where lands have been sold for taxes, the state cannot impeach the title by a resale of the land for taxes due and unpaid for prior years. Gates v. Keigher, 99 Minn. 138, followed and applied.

**Tacking Prior Taxes—Answer—Judgment.**

3. Where the state undertakes to tack taxes anterior to plaintiff's tax title to a subsequent forfeited sale, the objection of the excessive amount should be interposed by answer. Where no such objection is interposed, the mere excess in amount of the judgment does not necessarily avoid it.

**Designation of Newspaper.**

4. The designation of the newspaper in which is to be published the delinquent tax list is valid, if made at an adjourned meeting. Banning v. McManus, 51 Minn. 289, followed and applied.

**Same—Defect not Jurisdictional.**

5. While the means of obtaining jurisdiction to enter a judgment for delinquent taxes must conform in every essential respect to the statute, not every failure to conform to recognized practice, grammatical requirement, or technically correct phraseology will invalidate a designation of a newspaper in which to publish the delinquent tax list, which is substantially in accord with statutory requirements.

Here the certified copy of the resolution recommended the acceptance of the bid of the Minneapolis Tribune, and that the contract be awarded to "them" upon the filing of a proper bond. This resolution was adopted. It is *held* that a person of ordinary intelligence, examining the record, would have understood that the newspaper named the Minneapolis Tribune had been designated, and that the judgment based upon publication in that newspaper was not void.

**Re-enactment of Section.**

6. Section 936, R. L. 1905, is a revision and restatement of section 52, c. 2, Laws 1902, and reference to lands forfeited under section 936 is in legal effect a reference to lands forfeited under section 52, c. 2, Laws 1902.

**Tax Sale—Payment "Forthwith."**

7. Where bids at a tax sale were made on November 15 "just before the close of the day, nearly five o'clock," the hour at which the offices closed. and the full consideration was paid on the day following, there was a compliance with the statutory requirement that the payment be "immediately" and "forthwith."

106 M.—3

**Form of Certificate.**

8. The form of the certificate prescribed by the attorney general for the forfeited sale in 1906 is *held* valid.

Action in the district court for Hennepin county against Hugh R. Scott, as county auditor of that county, and the Central Real Estate Company, and the county of Hennepin, to determine adverse claims to land. The adverse claims were based on a purchase by defendant company at the forfeited tax sale in 1906. The other facts are stated in the opinion. The case was tried before Simpson, J., who found that plaintiff was the owner in fee simple and that defendant's certificates of tax sale were liens against the respective lots for the amount stated. From an order denying a new trial, plaintiff appealed. Affirmed.

*Tryon & Booth,* for appellant.

*Jas. E. O'Brien, Al. J. Smith,* and *Wm. C. Leary,* for respondents.

On October 23, 1908, the following opinion was filed:

JAGGARD, J.

Plaintiff, as the owner in fee under sale for taxes assessed for the year 1898 and in possession of certain premises in Hennepin county, Minnesota, brought this action against defendant, which, in its final form, resolved itself into an action to determine adverse claims. The defendant bought the land at a tax sale held in November, 1906, for forfeited lands. The sale was based on a judgment,[3] in 1902 for 1900 taxes, under which the lands were bid in for the state in May, 1902. The sale included the 1902 and 1903 taxes then delinquent, and also the current tax for 1905, and, listed with it, the taxes for 1894, 1895, 1896, and 1897, which had previously been refunded to the plaintiff. A considerable surplus was bid and paid above all taxes. The trial court found that plaintiff was the owner in fee, and gave to defendant a lien for the full amount of the forfeited sales, including the surplus and current and refunded taxes. Plaintiff moved for a new trial, and appealed from the order denying the motion.

1. The preliminary question raised by the appeal is whether plaintiff, upon attempted redemption, was entitled to deduct the amount bid and for which the land was sold above the amount due the state. This involves immediately a construction of sections 936–940, R. L. 1905.

[3] See opinion on reargument, page 41.

The substance of these provisions is that land bid in to the state, and not assigned to purchasers or redeemed within three years from the sale at which they are offered, shall become the absolute property of the state. The state auditor, after notice, offers for sale these lands so forfeited. The purchaser receives a certificate, and is entitled to a deed from the state after notice of the expiration of the time for redemption and proof of such service. Until the expiration of the time specified in such notice for redemption, the land is subject to redemption as provided in section 946. The proceeds of the sale are divided between the county and the state, and the excess, if any, above the taxes, penalties, interest, and costs charged upon the land, is included in the draft of the state auditor to the state treasurer, and is paid for the benefit of the state. Section 946, subd. 3, provides, so far as here involved, that the person redeeming shall pay to the county treasurer "the amount paid by such purchaser, with interest at the rate for which such parcel was sold," together with subsequently accruing costs.

These sections naturally suggest the construction that at the end of the three years land bid in to the state and not redeemed or sold is absolutely forfeited to the state. In point of fact, however, the state undertakes to sell, not an absolute, but a qualified, interest. It expressly recognizes the right of the owner and other persons sufficiently interested in the property to redeem the land. This is obviously inconsistent with the conception of the absolute and unqualified property in the state. This view accords with the history, not only of previous, but of subsequent legislation, as was set forth in State v. Scott, 105 Minn. 69, 117 N. W. 417. That case, however, was governed by the Revised Laws of 1905, and arose after a significant change was made in the language of the law by section 1, c. 430, p. 612, Laws 1907. As was pointed out in it, the purpose of these statutory provisions is to secure revenue from public lands as speedily and as inexpensively as may be. No valid reason appears for interpreting these provisions so as to put the state in the light of a speculator by selling the land for more than the charge due the state against it. The provision for paying the excess into the state is not necessarily inconsistent with this conception. The land may never be redeemed. In that case the surplus will remain in the state treasury. This construction gives adequate meaning

to the section. In case of redemption the state would reasonably be required to pay to the owner of the land the excess which was received for his benefit.

The analogy of mortgage foreclosure sale is apt. The state, like the mortgagee, has a lien. It forecloses that lien. Upon redemption the full sum of the sale is paid to the purchaser. If there be any surplus, or if there be redemption by the mortgagor, the mortgagor is entitled to the surplus. In the case at bar, therefore, as far as the matter of surplus is concerned, this requirement of the payment by the owner of the land of the full amount of the tax sale conforms with the express language of section 946, subd. 3.

It follows, accordingly, that plaintiff was not entitled to redeem from the sale for the amount which excluded the surplus. Questions as to how the landowner can recover the surplus are not before us.

2. It is clear that, where lands have been sold for taxes, the state cannot impeach the title by a resale of the land for taxes due and unpaid for prior years. State v. Camp, 79 Minn. 343, 82 N. W. 645; Gates v. Keigher, 99 Minn. 138, 108 N. W. 860. Therefore, if timely objection had been raised, the state could not have collected the taxes for 1894, 1895, 1896, and 1897. That objection, however, should have been interposed by answer. The plaintiff is in a situation in which, if he had applied to the court to open or correct the judgment, he would have been confronted with the fact that the land had been sold to an innocent third person for value. Mere excess in the amount of the judgment did not necessarily avoid it. Whether other relief would be available for the plaintiff in this matter is not before us.

3. This naturally leads to the consideration of the question whether the jurisdiction of the court to enter judgment was obtained in accordance with statute. One objection is that the certified copy of the board of commissioners' resolution designating the newspaper for the publication of the delinquent tax list, which is jurisdictional (Eastman v. Linn, 26 Minn. 215, 2 N. W. 693; Merriman v. Knight, 43 Minn. 493, 45 N. W. 1098; Kipp v. Dawson, 31 Minn. 373, 17 N. W. 961, 18 N. W. 96), was dated the thirteenth of January. Section 1581, c. 11, G. S. 1894, requires that the newspaper shall be designated by the board of county commissioners at their annual meeting in January. In Hennepin county this has been held to mean the meeting held on the

first Monday in January. Reimer v. Newel, 47 Minn. 237, 240, 49 N. W. 865. If this were all the record disclosed, the designation would have had no legal effect. It appears, however, from the records of the county commissioners introduced in evidence, that at the annual meeting of the first Monday in January the board adjourned to January 13 and that it met on January 13 pursuant to adjournment. The designation at the adjourned meeting is valid. Banning v. McManus, 51 Minn. 289, 53 N. W. 635.

Another objection in this connection is a more serious one. The certified copy of the resolution recommended the acceptance of the bid of the "Minneapolis Tribune," that a contract be awarded to "them" upon the filing of a proper bond for the faithful performance of said contract, and that the chairman be instructed to enter into a contract as per the specifications in bid. A commissioner thereupon offered the following resolution: "Resolved, that the report of the committee be accepted and its recommendations concurred in. Adopted." This undoubtedly was not in conformity with the designation in preceding and in following years throughout the state generally. In practice this has been followed by a resolution designating the newspaper by resolution so certified and filed. Such resolution does not appear upon this record. The Minneapolis Tribune was not expressly described as a newspaper. To refer to the Minneapolis Tribune as "them" fails to conform with good grammar. It is urged, also, that if it be held valid, then it would be immaterial that the bond and lawful contract be made. None the less the county commissioners had acted in such a way as to lead a person of ordinary intelligence, examining the record, to understand that the newspaper named the "Minneapolis Tribune" had been designated. It is not reasonable to question that a newspaper was described.

No decision of this court on the subject is inconsistent with this conclusion. Upon filing the bond, the contract was completed, and the transaction created mutual obligations. That bond would have been valid and enforceable. While it is true that the means of obtaining jurisdiction must conform in every essential respect to the statute, it does not at all follow that every failure to conform to recognized practice, grammatical requirement, or technically correct phraseology will invalidate a designation which is substantially in accord with statutory requirements. If perfection in the performance of duties were

required of county officials, the state would be wholly unable to collect its taxes. This view accords with precedent. "Considering that the main object of designating an official paper is to advise parties in what paper to look for notices affecting their property, it seems to us, in view of all the facts,. that any one examining the resolution of the city council would have readily understood what paper was referred to, and consequently that the designation fully satisfied the requirements of the charter." Fairchild v. City of St. Paul, 46 Minn. 540, 49 N. W. 325; Bartlett v. Eau Claire, 112 Wis. 237, 88 N. W. 61; State v. Cronin, 75 Neb. 738, 106 N. W. 986. And see section 914, R. L. 1905.

4. The general notice for the 1906 forfeited sale, it is urged, did not include the lands here involved. That notice referred to "all tracts or parcels of land sold for taxes in Hennepin county to which the state has acquired title, under the provisions of chapter eleven (11), Revised Laws of Minnesota 1905." The lands in question were bid.in to the state in. May, 1902, under the provisions of chapter 2, p. 1, Laws 1902. The provisions then in force, including the sections which authorized a subsequent further sale, established the rights as between the landowner and the state. If the notice had referred to tract of land "to which the state has acquired title under the provision of chapter 2, p. 1, Laws 1902," no reasonable doubt would have existed as to the propriety of the notice. The question is whether the notice, referring to lands.to which the state acquired title under the provision of chapter 11, p. 139, R. L. 1905, is sufficient. This is determined by section 5508, R. L. 1905. That section reads: "The provisions of the Revised Laws, so far as they are the same as those of existing statutes, shall be construed as continuations thereof, and not as new enactments; and references in statutes not repealed to provisions of law which are revised and re-enacted herein shall be construed as applying to such provisions as so incorporated in the Revised Laws."

Section 52, c. 2, p. 28, Laws 1902, reads as follows: "All pieces or parcels of real property bid in for the state under the provisions of this act, and not assigned to purchasers, and not redeemed within three years from the date of the tax sale at which the same were offered for sale, shall become the absolute property of the state, and shall be disposed of ,in the manner as provided in sections 53 and

54 of this act." Section 936, R. L. 1905, provides: "All parcels of land bid in for the state, and not assigned to purchasers or redeemed within three years from the date of the tax sale at which they are offered, shall become the absolute property of the state and be disposed of as provided in this section and § 937." It is to be noted that section 936 was revised by omitting the words "under the provisions of this act." That section was a revision and re-enactment, inter alia, of section 52, c. 2, p. 28, Laws 1902.

The reference to section 936 had the same legal effect as to land referred to in section 52, c. 2, p. 28, Laws 1902. Section 936 is a different name for the legislation enacted by section 52, c. 2, p. 28, Laws 1902. Section 936 was not a new enactment, but a restatement of a previously enacted law. To hold the description good is entirely consistent with Stein v. Hanson, 99 Minn. 387, 109 N. W. 821. No change was made by the legislature. The Laws of 1902 governing the sale is the legislation so described under a different name. The result was to make section 936 retroactive.

5. The sale is attacked because bids were made on November 15, 1906, on which day the sale closed, but the money was not paid to the treasurer until the sixteenth. Moreover, the county treasurer was not in attendance at the time the property was struck off. The auditor did not stop to make out the certificate and receipt for the consideration, but went right on with the sale. The statute provides that the purchaser shall forthwith pay his money, and that the officer conducting the sale shall make the certificate and that the treasurer shall attend the sale and take the money. Section 937. On November 15, before the money was paid, there was testimony that plaintiff asked to redeem, was ready and able to redeem, called for statements, and was refused. These considerations are not sufficient to avoid the sale. The provisions that the purchasers are required to make immediate payment and that they shall forthwith pay must be reasonably construed. It appears the property was bid in "just before the close of the day, nearly five o'clock," at which hour the county offices closed. The payment on the following day was "immediate"—"payment forthwith"—within the fair construction of those terms. The money was actually paid into the treasury. The absence of the treasurer at the time the bid was made is, at most, an irregularity, and did not invalidate the sale. Section 940, R. L. 1905.

In Pigott v. O'Halloran, 37 Minn. 415, 35 N. W. 4, the first payment was made on the fifteenth of February, and the remainder was paid about the middle of March. There is no analogy between the cases, apart from the differences of the statutes affecting the situation in force when that case was decided and the present time. In Cook v. John Schroeder Lumber Co., 85 Minn. 374, 88 N. W. 971, the land was not offered for sale by the auditor in the order in which it was described in the judgment, as is required by section 1592, G. S. 1894. This irregularity in the conduct of the sale was held not to invalidate it, because of section 1594. Here, as in that case, the party objecting did not prove either that taxes were paid before judgment was rendered or that the land was not offered at said sale to the bidder who would pay the amount for which the piece or parcel was sold. It is true that section 940 adds exceptions, but none of them affect the case at bar. It may well be questioned whether plaintiff's attempt to redeem, if it had been adequate, would have availed to defeat the certificate; but this is not necessary to decide, for there was cogent testimony which tended to disprove any attempt by any one to redeem before the sale was made—that, if made at all, the demand was after the sale, for any amount which excluded at least the surplus.

6. It is also urged that the certificates are void; that the reference to lands forfeited under the Revised Laws has been held not to invalidate them. The form was prescribed by the attorney general. It was not recited that the county auditor had transmitted the list of lands to the state auditor. It did, however, recite that the lands had become the absolute property of the state, and that the sale was pursuant to notice given by the state auditor. In view of the provisions of section 940, R. L. 1905, we are constrained to hold that the certificate was valid.

Affirmed.

The case having been reargued, the following opinion was filed on January 29, 1909:

JAGGARD, J.

On reargument plaintiff insists that no judgment had been procured or rendered on taxes of 1894, 1895, 1896, 1897, or either of them, after their refundment and prior to the forfeit sale under which de-

fendant claims; that by reason of their inclusion plaintiff was deprived of an opportunity of defending against them to which it was entitled; and that the sale, being for much more than the proper amount of taxes, was void.

The conclusion does not follow from the premises. On judgment rendered in 1896 for taxes of 1894, the sale was made to plaintiff's grantor, who voluntarily paid delinquent taxes of 1895, 1896, and 1897. In 1901 that judgment was satisfied and plaintiff reimbursed as to taxes of 1894, 1895, 1896, and 1897. On subsequent sale for these taxes the rights of the parties would have been determined, not by State v. Camp, 79 Minn. 343, 82 N. W. 645, and Gates v. Keigher, 99 Minn. 138, 108 N. W. 860, but by State v. Kipp, 80 Minn. 119, 82 N. W. 1114; Oakland Cemetery Assn. v. County of Ramsey, 98 Minn. 404, 108 N. W. 857, 109 N. W. 237, 116 Am. St. 377, and Allen v. County of Ramsey, 98 Minn. 341, 108 N. W. 301. In this view the conclusion originally reached was correct.

In point of fact, however, the taxes for the year 1905 were duly levied and assessed, and the auditor, in extending the said taxes upon the said lands entered therewith the levied taxes of 1894, 1895, 1896, and 1897. It was erroneously assumed in the original opinion herein that the sale made in 1906 was upon a judgment rendered thereon. The sale under which defendant claims, and which is here involved, was made in November, 1906, upon the taxes for the year 1900. These taxes became forfeited to the state because the same had not been bid in by an actual purchaser and had not been redeemed for more than three years after the sale to the state. The county auditor forwarded to the state auditor a list of the lands including the lots here in question which had been forfeited to the state. The state auditor, pursuant to the law, directed the forfeited sale. At the sale the lots in issue were sold to defendant real estate company for an amount which was largely in excess of the total taxes for the years 1900, 1902, and 1903, the current taxes of 1905, and the refunded taxes for 1894, 1895, 1896, and 1897. The surplus above the amount due the state, as was held in the original opinion, will come finally to the plaintiff. The amount due the state, including the refunded taxes, properly goes to the state.

The land was forfeited to the state. It had a right to determine on what conditions it would dispose of its estate. It might have sold a

fee simple estate to the lands, in accordance with former practice, to a purchaser. It saw fit, however, to sell the lands subject to the right to redeem. It had a right to fix the terms upon which it would sell. Its terms might have been, as in other years, such sum as the purchaser would give, or such sum as the purchaser would give providing it was not less than one-half the amount due the state, or not less than the whole amount due the state, or any sum otherwise determined. As a matter of fact the legislature had provided, at the time of this forfeited sale, that the consideration must be sufficient to cover these prior refunded taxes, in addition to the others as to which no objection is made. This it had a perfect right to do. Plaintiff has no cause for complaint. He had his opportunity to defend against the taxes for the year 1900 and to redeem after the sale therefor. He cannot be heard to question the rights of the state to dispose of the lands forfeited to the state as the legislature prescribed; that is to say, plaintiff's title acquired under the sale for the year 1908 is not impeached by a sale for taxes anterior to that date.

The original conclusion must therefore be adhered to.