JACOB STEIN v. HANS C. HANSON and Others.[1]

November 23, 1906.

Nos. 14,978—(51).

**Statute—When not Retroactive.**

Statutes will be considered to have a prospective operation only, unless a legislative intent to the contrary is expressed by or implied from the language used or particular circumstances, especially where to construe the act as retroactive in its operation would render it obnoxious to some constitutional provision.

**Sale of Land for Taxes.**

The substantive rights of the owner of land sold for taxes are determined by the law in force at the time the adverse proceedings are taken.

**Tax Deed.**

A tax deed to land bid in for the state at a tax sale in 1901, which was executed in 1904 to a purchaser, by the county auditor in accordance with sections 1616, 1617, c. 11, G. S. 1894, is not void because it failed to conform with the provisions of sections 53, 54, c. 2, p. 28, Laws 1902.

**Redemption—Notice.**

A notice of expiration of redemption as to such land, prepared and served pursuant to section 1654, c. 11, G. S. 1894, is sufficient to perfect the tax title.

**Same—Return of Service.**

That the return of service of such notice by the sheriff was improperly dated did not deprive the notice of its statutory effect.

**Spelling of Name.**

That the original notice was directed to Hans E. Hanson, while the notice as published was directed to Hans E. Hansen, was a mere irregularity.

**Delinquent List.**

A statement of the amount of taxes in the delinquent list in which the dollars were separated from the cents by the usual heavy ledger line was legally sufficient.

Action in the district court for St. Louis county to determine adverse claims to unoccupied land. The case was tried before Dibell, J.,

[1] Reported in 109 N. W. 821.

who found in favor of the plaintiff. From a judgment entered pursuant to the findings, defendant Hanson appealed. Affirmed.

*John Jenswold, Jr.,* for appellant.

*Sullivan & Grant,* for respondent.

JAGGARD, J.

The plaintiff and respondent claims title to land bid in for the state at a tax sale in 1901 in accordance with the proceedings of chapter 11, G. S. 1894.

The special session of the legislature for 1902 revised the laws pertaining to the collection of the real estate taxes, changed many of these provisions and substituted others, in general pursuance of the report of the tax commission. In 1904, after that revision had gone into effect, the land in question was sold at public sale, and deeded by the county auditor, pursuant to the directions of the state auditor, to the plaintiff, in accordance with sections 1616, 1617, c. 11, G. S. 1894, but not in accordance with sections 53, 54, c. 2, p. 28, Laws 1902. These last-named sections provide for the publication of notice of sale of unredeemed lands by public auction at a time fixed in the notice; for a sale made either by the state auditor or his deputy, or the county auditor; and for an absolute deed, signed by the governor.

The question thus presented is whether the lands, which had been bid in to the state before the laws of 1902 were enacted, and which remained unredeemed thereafter, were to be disposed of in accordance with the provisions of sections 1616, 1617, G. S. 1894, or of sections 53, 54, c. 2, p. 28, Laws 1902. The two sections, whose construction is thus involved, are sections 52 and 88. The relevant part of the first section in title 5 of that act, pertaining to the "sale of unredeemed lands," is as follows:

> Section 52. Unredeemed Lands the Property of the State— County Auditor to Prepare Lists of Same. All pieces or parcels of real property bid in for the state under the provisions of this act, and not assigned to purchasers, and not redeemed within three years from the date of the tax sale at which the same were offered for sale, shall become the absolute property of the state, and shall be disposed of in the manner as provided in sections 53 and 54 of this act.

That section by its express terms, and sections 53 and 54 in consequence, apply only to "pieces or parcels of real property bid in for the state under the provisions of this act." That language expressly excludes from the operation of these sections unredeemed lands forfeited to the state under the provisions of prior laws. Section 88, p. 42, of the act of 1902, repeals all acts and parts of acts inconsistent with the provisions of that act

> provided, however, that all proceedings for the enforcement of taxes charged against any piece or parcel of land and becoming delinquent in the year 1902, shall * * * prior to the time when this act takes effect. * * *

The act of 1902 took effect on March 12, 1902. It was the evident legislative intention to avoid any question as to what law applied to proceedings for the enforcement of the tax for the year 1902. That year was the boundary line between the old and the new system; in consequence of the proviso, uncertainty as to what law is applicable thereto is prevented. The contention of defendant, that this was an indication of an intention that proceedings prior to 1902 should be governed by the laws subsequent thereto is ingenious but plainly untenable. "It may be laid down as a fundamental rule for the construction of statutes that they will be considered to have a prospective operation only, unless a legislative intent to the contrary is expressed or necessarily to be implied from the language used or the particular circumstances, especially where to construe the act as retrospective in its operation would render it obnoxious to some constitutional provision." 26 Am. & Eng. Enc. (2d Ed.) 693, and cases there cited; and in addition thereto see Tompkins v. Forrestal, 54 Minn. 119, 125, 55 N. W. 813; Giles v. Giles, 22 Minn. 348; Wilson v. Red Wing School Dist., 22 Minn. 488; State v. Waholz, 28 Minn. 114, 9 N. W. 578. The terms of both sections 52 and 88 clearly express the obvious purpose of definitely fixing the time when the new system should go into effect as subsequent to the year 1902. Any other construction would involve the constitutional impropriety of the legislative attempt to impair the primary rights of the owner of the fee, which were determined by the laws in force at the time when the adverse proceedings were taken.

The conclusion follows, that the plaintiff's deed is not void because it was executed in conformity with the requirements of only the law in force at the date of sale, and not of the law in force at the date of the execution of the deed.

2. Another contention of the defendant is that the notice of expiration of redemption given in accordance with the requirements of section 1654, G. S. 1894, and not in accordance with the requirements of section 47, c. 2, p. 26, Laws 1902, was therefore void. It may well be doubted whether the laws of 1902 require that notice of the expiration of redemption be given as to absolute deeds to unredeemed lands executed under section 55. It would not, however, be proper to anticipate the resolution of that doubt upon the record and argument here. The substantive rights of the owner of the land were determined at the time of sale; he could not be deprived of his interest therein by anything less than conformity with the notice there required by section 1654, c. 11, G. S. 1894. When such notice had been given, all conditions precedent to the elimination of his right of redemption had been complied with.

The distinction between this case and Pigott v. O'Halloran, 37 Minn. 415, 35 N. W. 4, is obvious. In that case the sales were made under the general laws of 1874 and 1875, at a time when no notice of expiration of redemption was required. The land was bid in to the state. Subsequent to the enactment of chapter 6, p. 27, Laws 1877, requiring what may be conveniently referred to as the "Williston notice," the state assigned the certificate to defendant's grantor. This court held that the rights of that grantor under the state assignment certificate having been acquired after the law requiring the notice went into effect, could not ripen into perfect title until that notice had been given. In brief, at the time the sale in this case was made there was a statute requiring notice; in Pigott v. O'Halloran, no notice was required at the time the land was bid in for the state but at the time of the assignment by the state to the individual such notice was required.

It was held in State v. McDonald, 26 Minn. 145, 147, 1 N. W. 832, to which defendant refers, that the Williston notice need not be given as to assignments made before the passage of the law requiring it. Obviously that case has no direct bearing upon this controversy. We are more easily led to this conclusion that the notice in this case was

correctly given, because the differences, which defendant has pointed out between the notice here given under chapter 11, G. S. 1894, and the notice required by section 47, c. 2, p. 26, Laws 1902, pertain to matters of form rather than of substance. There are verbal variations in the title of the notice, its contents, and in the attestation clause, but it has not been pointed out to us that the latter notice changes the law in any substantial respect.

3. A number of minor objections were raised to the tax title. None of them set forth reversible error.

The sheriff's return of service of the notice of expiration was imperfectly dated, so as to appear to be subsequent to the stamp of its filing in the county auditor's office. The return was dated "August 30, 19—;" it was marked as having been filed on August 29, 1904. The date was not required by mandatory provision of any statute. Moreover, the presumption of regularity in the performance of official duties applies.

The original notice of the expiration of redemption was directed to "Hans E. Hanson;" the notice as published, was directed to "Hans E. Hansen." This was a mere irregularity. The rule of idem sonans deprives this contention of merit.

In the list of delinquent taxes filed with the clerk, the amount of taxes delinquent and penalties was described by use of the figures 6 0 5. Between the figures 6 and 0 there was the usual heavy ledger line. In the explanation of abbreviations which accompanied the list appeared this: "* * * Dolls. dollars; cts. cents. * * *" It is urged that this statement of amount is insufficient, because the amounts charged against the property are not therein so designated that a person of ordinary intelligence could with reasonable certainty identify the same, especially in view of the misleading explanation. This statement of amount of taxes occurring not in the judgment list, which serves the purpose of a complaint, was clearly sufficient. No reasonable person could have been misled by this conventional method of expression. An objection to its incompleteness might have been taken by way of abatement, if interposed in due time before the judgment was entered; but, presumptively, the judgment based on it was correct.

Judgment affirmed.