STATE ex rel. FRANK W. SHAW v. HUGH R. SCOTT.[1]

July 10, 1908.

Nos. 15,611—(173).

**Taxes—State Assignment Certificate.**

    A county auditor has authority, under section 935, R. L. 1905, to execute a state assignment certificate for lands sold at regular delinquent tax sale after more than three years have elapsed from the date of the tax sale, and before proceedings to sell under sections 936 and 937, R. L. 1905, have been initiated in any one year.

Petition to the district court for Hennepin county praying for a peremptory writ of mandamus directed to defendant as auditor of that county and commanding him, upon payment of the proper amount due him therefor, to execute to the petitioner a proper assignment of the rights of the state of Minnesota to certain lands acquired upon a sale for the tax of 1902. The matter was heard before Frederick V. Brown, J., who ordered that the alternative writ of mandamus be discharged and the relator's petition dismissed. From the judgment so entered, relator appealed. Reversed.

[1] Reported in 117 N. W. 417.

The question here presented concerns the construction of sections 935 and 936, R. L. 1905, as to whether a county auditor has authority to execute a state assignment certificate for lands sold at the regular delinquent tax sale, when more than three years have elapsed since the date of the sale. In this case a tract of land in Hennepin county was, on May 10, 1904, bid in for the state at the regular tax sale for delinquent taxes for that year. February 7, 1908, the land not having been redeemed, the relator herein tendered to the county auditor of Hennepin county the proper amount due for a state assignment certificate and demanded the same. The auditor refused to issue any certificate, on the sole ground that he had no authority to execute such an instrument after three years from the date of the tax sale. The relator herein filed his petition for a writ of mandamus. An alternative writ was issued and served. Upon the return day of the alternative writ, the court, on motion of the defendant, quashed the writ, and ordered judgment dismissing the relator's petition. From that judgment this appeal was taken.

*Cohen, Atwater & Shaw,* for appellant.

*Al. J. Smith,* County Attorney, and *W. C. Leary,* Assistant County Attorney, for respondent.

JAGGARD, J. (after stating the facts as above).

Section 935 provides: "At any time after any parcel of land has been bid in for the state, the same not having been redeemed, the county auditor shall assign and convey the same, and all the right of the state therein acquired at such sale, to any person who shall pay" the amount then defined. The natural construction of this language would lead to the conclusion that the county auditor has authority at such time to execute a state assignment certificate of the lands to this relator. That natural construction is sustained by a number of considerations:

1. This language of section 935 is a deliberate change of section 1601, G. S. 1894, in force prior thereto, which provided that the assignment certificate should be issued at any time after the land had been bid in to the state, but before forfeiture to the state. Effect should be given to the legislative alteration.

2. The tendency of legislation has been to change the title of the

state to lands bid in to it at a tax sale, and not assigned, from absolute to qualified. There are three classes of cases involving title to land after a tax sale, as there are three classes of certificates:

First, by the certificate of direct purchase executed to the successful bidder at a tax sale, a lien on the land, which may or may not be matured into title to the land, is created.

Second, where, at a tax sale, land is bid in to the state, the land is subject to redemption, and the right to buy from the state exists for the period of three years. The purchaser receives a state assignment certificate, under which his rights are essentially the same as those of the purchaser of a certificate by direct purchase.

The third class of cases is the one with which we have here to do. If at the end of three years the land has not been redeemed, nor the right of the state assigned, the land at one time became the actual property of the state. The state could have executed an absolute deed conveying fee title to the property. In other words, at the end of three years, as to land bid in to the state and not assigned, title was transferred to the state, and the title of the original owner was barred. While notice to eliminate the right of redemption must have been given as to certificates by direct purchase and as to state assignment certificates, no such notice was originally required as to forfeited deeds by the state. See G. S. 1894, §§ 1593, 1601, 1616, 1617; Nelson v. Central Lumber Co., 35 Minn. 408, 29 N. W. 121; State v. Smith, 36 Minn. 456, 32 N. W. 174; Mueller v. Jackson, 39 Minn. 431, 40 N. W. 565. By Laws 1889, p. 310, c. 198, § 1, however, it was provided that the grantee of a deed from the state must also give the notice to eliminate the right of redemption. What title remained in the state as to land not sold we need not here stop to consider. The revision of 1905 (section 936) continued to treat lands bid in to the state and not redeemed or assigned within three years from the date of sale as "the absolute property of the state." Section 1, c. 430, p. 612, Laws 1907, however, omitted those words. It is to be noted in this connection that under section 944 the rents of property which has been bid in to the state at the tax sale, and not redeemed nor assigned, are subject to attachment alike during the period when such land is subject to assignment or redemption and during the period subsequent to the expira-

tion of the three years and prior to the forfeited sale under section 936.

3. It is against public policy to increase the number of tracts of land to be sold under sections 936 and 937, and it accords with public policy to minimize their number. If the state's contention be accepted, the rights of the state in lands bid in for the state at a tax sale and not assigned would, after the expiration of three years and before the subsequent sale under the Laws of 1907, be inalienable.

The construction for which the state contends would also expose the public to possible loss, because under section 937, as amended in 1907, the second sale may be made for not less "than the aggregate taxes, penalties, interest and costs charged against it, unless the cash value thereof, fairly determined by the state auditor, shall be less than such aggregate." Whether the state could ultimately profit by a sale for more than the amount due is an undetermined question. It is obviously desirable, also, to avoid the costs of such a sale.

Doubts as to several essential questions arising under the provisions as to forfeited lands, not clear in themselves and not yet judicially determined, serve to emphasize the propriety of restricting the number of such sales. For example, no provision is made in the act of 1907, nor in the Laws of 1905, for bidding this land in to the state, in the absence of bidders in proceedings under sections 936, 937, et seq. Again, section 956 provides: "Every person holding a tax certificate, after expiration of three years after the date of the tax sale under which the same was issued, may present such certificate to the county auditor; and thereupon the auditor shall prepare, under his hand and official seal, a notice. * * *" If the contention of the state be correct, after land has been bid in by the state, and three years have expired without assignment or redemption, there is a second tax sale under section 937. A tax certificate is there issued to the purchaser. If three years must expire before he can give notice to eliminate the right of redemption (section 956), then it would be six years after the original tax sale before the tax title could be perfected.

Respondent relies upon section 936, as amended by chapter 430, p. 612, Laws 1907, in part as follows: "All parcels of land bid in for the state, and not assigned to purchasers or redeemed within three years from the date of the tax sale at which they are offered, shall be

disposed of as provided in this section and section 937." The uncertainty in this section arises from the clause "within three years from the date of the tax sale at which they are offered." This clause renders the section at most ambiguous, for it may modify both "not assigned to purchaser" and "redeemed," or "redeemed" only. The latter is the natural interpretation, and conforms with reason and other sections of the chapter, and public policy, as has been pointed out; that is to say, this part of the section may be regarded as meaning: "All parcels of land bid in for the state and which have not been assigned to purchasers or which, within three years from the date of the tax sale at which they have been offered, have not been redeemed."

The effect of this part of the section is to fix a time when the auditor shall treat these lands as those to be included in a list to be sent to the state auditor to be sold in the following November. This section does not necessarily limit the execution of a state assignment certificate to a period of three years. It is significant that the provision of the first paragraph of section 1602, G. S. 1894, providing that land may be redeemed "at any time within three years from the date of sale," is entirely omitted in the corresponding section in 1905 (section 945). Inferentially may not the owner redeem at any time when notice has not eliminated his right? That notice cannot be given until three years have expired after sale (section 956).

The purpose of these statutory provisions is to secure revenue from public lands as speedily and as inexpensively as may be. To give controlling effect to the first part of section 935, and to allow assignment certificates to issue at any time after any parcel has been bid in by the state, where the land has not been redeemed and before proceedings have been initiated under sections 936, 937, in any year, reconciles apparently inconsistent provisions, in general conduces to the harmonious administration of the revenue system, and seems to effectuate legislative intention.

Reversed.